470 A.2d 1308

**MAYOR AND CITY COUNCIL OF OCEAN CITY, Maryland et al.**

v.

**Halton JOHNSON.**

**No. 520, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

Feb. 7, 1984.

Guy R. Ayres, III and Ransom J. Davis, Baltimore, with whom were H. Russell Smouse and Melnicove, Kaufman, Weiner & Smouse, P.A., Baltimore, on brief, for appellants.

Allen G. Windsor, Baltimore, with whom was David S. Harris, Baltimore, on brief, for appellee.

Argued before WILNER, GARRITY and BLOOM, JJ.

WILNER, Judge.

On April 24, 1979, Lieutenant Halton Johnson, appellee, was dismissed from the Ocean City police force. Nearly five

years after the event, we are asked to determine whether the Circuit Court for Worcester County erred when it concluded that the dismissal was invalid and ordered the municipal authorities to reinstate Lt. Johnson. The case has a somewhat tortuous procedural history, and there are a number of collateral issues raised, but the crux of the matter is whether the regulations that Lt. Johnson was found to have violated were validly adopted.

That issue, in turn, depends in large measure on the proper construction of § 15–1 of the Ocean City Code, which provides:

> "The Chief of Police of the Police Department of the Town of Ocean City, Maryland, *subject to the approval of the Mayor and City Council,* shall establish and maintain legal rules, regulations, general orders and general procedures as he or the Mayor and City Council deems necessary for the proper administration, discipline and efficiency of the Police Department of the Town of Ocean City, Maryland." (Emphasis supplied.)

At some point in 1975, the Chief of Police, purporting to act under the authority vested in him by § 15–1, adopted a new set of regulations for the city police force.[1] These new regulations were intended to supplant the code of regulations adopted in 1970.

On January 11, 1979, the Chief of Police filed a set of twenty-six charges against Lt. Johnson, each accusing him of a violation of one or more of the 1975 regulations. Most of the charges involved alleged failures to give proper

---

1. The new regulations were in the form of a manual entitled "Rules and Regulations and Manual of Procedure." The first paragraph of the manual states:

 "By virtue of the authority vested in him by law, as set forth in the City Code, the Police Chief of Ocean City has established the following rules, regulations, and procedures for the administration and discipline of the Police Department. These rules, regulations and procedures are with the approval of the Mayor and City Council and may be changed by the Mayor and City Council if he [*sic*] feels the rules, regulations and procedures doesn't [*sic*] reflect the best interest of the Department."

supervision, to report for duty, or to obey orders. In accordance with the Law Enforcement Officers' Bill of Rights (LEOBR, Md.Code Ann. art. 27, §§ 727–734D), a hearing board was appointed to consider the charges.

The LEOBR hearing board conducted four days of hearing, at the conclusion of which, on April 10, 1979, it found Johnson "guilty" of some of the charges and "not guilty" of others. In a letter of April 18, 1979, to the Chief of Police, the board unanimously recommended that Johnson be dismissed. This recommendation was based on the board's conclusion that Johnson "has demonstrated none or little of the supervisory responsibilities and duties that he was assigned to or held accountable for." The board felt that "Lieutenant Johnson's performance as a supervisor was very inadequate and a detriment to the expectations, progressiveness, and professionalism of the Ocean City Police Department, as well as to the law enforcement profession in general." Upon this recommendation, the Chief terminated Johnson's employment on April 24, 1979.

Johnson appealed that decision to the Circuit Court for Worcester County. The relevant pleadings pertaining to that appeal (No. 7978) are not in the record before us; all we have is the court's opinion and order of April 25, 1980. From that opinion, it appears that Johnson claimed, as at least one basis for reversal, that the 1975 regulations under which he was charged were invalid in that they had not received the approval of the Mayor and City Council, an approval, he contended, that was required by § 15–1 of the city code. The police department argued that that issue had not been raised before the board, and should not, therefore, be considered by the court.

■ Although, as we have said, we are not privy to the various pleadings or the transcript of any oral presentation, it would seem from the court's opinion that the court may have misunderstood the thrust of Johnson's claim and the department's response to it. The 1975 regulations had not been formally placed into evidence before the board, and

thus were not included in the record transmitted to the court. The court, in discussing the department's waiver argument, focused not on whether Johnson had attacked the validity of the regulations before the board, but only whether he had asked that the regulations be placed into evidence. It stated:

> "Counsel for the Ocean City Police Department contends that this issue was not raised before the Hearing Board, and cannot be considered upon appeal. This Court disagrees that it cannot countenance the contention. On pages 6 through 9, and on page 11 of the Transcript, Counsel for the Officer raised the very issue of the requirement that the prosecution should have introduced into evidence the appropriate 'Departmental Rules and Regulations' upon which the charges against Lieut. Johnson were predicated. The prosecution did not, throughout the Hearing, introduce the rules, regulations, general orders, or general procedures under which the charges were framed." [2]

Apparently regarding a demand for the admission of the regulations into evidence as tantamount to an attack on their validity and presuming that it could not determine the issue of whether the regulations needed to be or had been approved by the Mayor and City Council without having the full text of the regulations before it, the court made the matter even more murky by remanding the case to the LEOBR hearing board "for the taking of evidence with regard to the issue herein specified, with such further action to be taken by the Hearing Board and the Chief of Police as a Findings of Fact by the Hearing Board may indicate."

---

**2.** We have examined pages 6–11 of the transcript of the board hearings and are unable to find any demand for the admission of the regulations, much less any claim that the regulations were not valid or had not been approved by the Mayor and City Council. Although it is, of course, necessary that a person subject to administrative disciplinary action be advised of the regulations he is accused of violating (*cf.* Md.Code Ann. art. 41, § 251), we know of no requirement that those regulations be actually placed into evidence.

Notwithstanding the somewhat abstruse reasoning employed by the court and the tenuous conclusions reached as the product of it, the Chief was content to let the decision stand. No appeal was taken, and no motion for reconsideration was filed.

On November 25, 1980, the LEOBR hearing board met again to consider the one issue of whether the 1975 regulations "had in fact [been] duly promulgated according to the Ocean City Code." After an evidentiary hearing, the board, in a letter of December 11, 1980, to the Chief, found:

"Testimony revealed that the Mayor and members of the City Council were provided with copies of the 1975 revisions of the Rules and Regulations Manual of Procedure for their review and comments. They subsequently returned the manuals to the Chief of Police with apparently little or no comment, which led to an apparent assumption that the manual was approved in its entirety. Based on the testimony of all witnesses, *there was no formal meeting of the Mayor and City Council to officially adopt the 1975 Rules and Regulations and Manual of Procedure.* Moreover, the Assistant City Solicitor stipulated that no minutes of any such council meeting exists; however, the manual was formally approved at a council meeting on June 2, 1980, subsequent to Lieutenant Johnson's hearing on disciplinary charges." (Emphasis supplied.)

Interpreting § 15–1 as requiring a "formal meeting (with recorded minutes) of the Mayor and City Council" in order to "promulgate the police department's rules and regulations and manual of procedure," however, and finding no evidence "to substantiate any such meeting," the board concluded that the 1975 regulations "were not duly promulgated" at the time of Lt. Johnson's hearing.

Armed with this conclusion, Lt. Johnson, on December 15, 1980, demanded reinstatement with back pay. Noting that, despite its conclusion regarding the regulations, the board nevertheless had declined to recommend reinstatement, the Chief rejected that demand.

Three proceedings were then filed in court. On December 29, 1980, Johnson filed an appeal in Case No. 7978—the case initiated by his earlier appeal from the April, 1979 order— from what he alleged was the "arbitrary, unreasonable, capricious, and improper" refusal of the hearing board and the Chief to recommend and to effectuate his reinstatement. The same day, he filed a separate petition for mandamus (No. 8676) in which he recited some of the procedural history and asked for an order requiring the Chief to reinstate him and compensate him for lost pay and other benefits. On January 9, 1981, a cross-appeal in Case No. 7978 was filed by the Mayor and City Council of Ocean City (who were not parties to the administrative proceeding), the Ocean City Police Department, and the Chief.[3] Their attack was on the board's finding that the 1975 regulations were not promulgated in accordance with the city code, a finding they said was arbitrary, capricious, and against the weight of the evidence.

The administrative appeals (Case No. 7978) came on for hearing on April 24, 1981. In an oral statement, the court concluded that the ordinance requires "an affirmative stamp of approval" by the Mayor and City Council. "Lacking the official stamp of the governing body," said the court, "the rules did not officially become effective." The docket entry for that day simply states "Court sustains the action of the Board." That determination was, in a practical sense, incomplete. It did not resolve Johnson's employment status. The LEOBR board had not recommended that Johnson be reinstated and the Chief had refused to reinstate him. The court's affirmance of the board's findings regarding the 1975 regulations did not change that situation.

As with the earlier decision, the government officials took no appeal. They did attempt to relitigate the issue of the

---

**3.** Johnson moved to dismiss the appeals filed by the Mayor and City Council and the police department, who defended the motion on the ground that they had an interest in a proceeding testing the validity of the regulations. The motion was denied, and so they remained parties to the appeal.

regulations in the mandamus case, however. On September 30, 1981, the court ruled once again that the ordinance required a formal approval, and that the decision of the LEOBR hearing board was correct.

The parties appeared before the court next on May 17, 1982, in the mandamus case. The city officials asserted that, because the court had yet to resolve, firmly and finally, the question of whether Johnson was improperly dismissed and whether he was entitled to reinstatement, both cases—the administrative appeals and the mandamus action—were still alive. Evidence was taken and the matter then held *sub curia*. On January 18, 1983, over Johnson's objection, the court agreed and consolidated the cases "for purposes of hearing and determination."

On February 28, 1983, the court issued a final opinion and order in both cases. After denying a motion by the city officials to "reopen the record" for the admission of further evidence regarding the approval of the regulations,[4] the court reaffirmed its two earlier rulings that the 1975 regulations had not been validly adopted at the time the charges against Lt. Johnson were heard by the LEOBR board. From that, the court concluded that, as the charges lacked a legal foundation, "there could not be a valid finding of guilt," and, absent a valid finding of guilt, "the officer's past job performance should not have been considered by the Board or by the Chief as a basis for action. . . ." The court then rejected the argument that the Chief had "inherent authority" to dismiss Johnson. Upon these findings, the court determined that Johnson had been improperly dismissed and that he has a "legal right to his former position." It therefore issued an order directing that Johnson be rein-

---

4. In the motion the city officials averred that they had acquired information "which indicates that the requisite formal approval of the Rules and Regulations by the Mayor and City Council was given, but because of some oversight, was not recorded in the minutes of the City Council's meetings." They wanted an opportunity to present the testimony of two individuals to that effect.

stated with pay and other benefits accruing from April 24, 1979.

In this appeal, the Chief of Police and the Mayor and City Council argue that:

(1) The 1975 regulations were validly adopted;

(2) Even if they were not validly adopted, Johnson's dismissal was not invalid, as there were ample grounds to justify it;

(3) Even if Johnson was improperly dismissed, he was not entitled to reinstatement by way of mandamus; and

(4) In any event, the court erred in denying their motion to reopen the case.

## (I) *Validity of Regulations*

 The initial thrust of appellants' first argument is that the regulations did not need the formal approval of the Mayor and City Council in order to be adopted by the Chief of Police. Johnson's preliminary response to that is that the issue is not properly before us. He argues, in the alternative, that (1) as the Mayor and City Council were not parties to the LEOBR proceeding in which that issue was decided, they have no standing to raise it here, and (2) in any event, as the issue was decided in the administrative appeal (Case No. 7978), that decision, by reason of *res judicata*, cannot be attacked in the mandamus action.

Neither of these pleas in bar has merit. The fact is that, rightly or wrongly, the Mayor and City Council, through their cross-appeal, were added and accepted as parties in the administrative appeal in order to litigate this very issue. Moreover, as we have indicated, the court's determinations of April 25, 1980, and September 30, 1981, were not regarded as final; the case was still regarded as alive, and was not finally determined until February 28, 1983. The earlier determinations do not, therefore, suffice to invoke the doctrine of *res judicata*.

Appellants' argument, on the merits, is a four-part one. They urge first that approval by the Mayor and City Council

is not a condition precedent to the valid promulgation of regulations by the Chief of Police; second, they contend that, even if such approval is regarded as a condition precedent, the requirement is a directory one and is not mandatory; third, they argue that, if prior approval really is necessary, it may be (and in this case was) given tacitly; and finally, they posit that, because Lt. Johnson was aware of the regulations and had a copy of them and had on earlier occasions been disciplined pursuant to them, he waived his right to complain that they had not been properly adopted. We reject all four prongs of the argument, for essentially the same reason.

It is not uncommon for statutes setting forth the structure and powers of government to require that certain acts, or the exercise of certain authority, by subordinate public officials be subject to approval by other officials who are superior to them. This is simply a way of conditionally delegating authority, with the higher official—the one having the closer nexus to the electorate—maintaining ultimate control. In nearly all such instances, the residual power to approve (or disapprove) is reserved for only the most important of the delegated powers, most frequently the power to appoint sub-officials, to make determinations (such as setting the compensation of staff) that have a fiscal or budgetary impact, to enter into agreements that bind the polity, or, as here, to adopt regulations having the force of law.[5]

The term "approval," and indeed the nature of the reserved power of approval, "is susceptible of different meanings dependent upon the subject matter and context con-

---

**5.** A computer search of the Annotated Code of Maryland revealed 470 instances in which the actions of one official or agency are made subject to approval by another. In at least thirteen cases, it is the rules or regulations of the subordinate that are subject to approval. *See* Md.Code Ann. art. 2B, § 60(m)(4); art. 29, § 11–109(a)(2)(ii); art. 40A, § 4–101(b); art. 41, §§ 204F(k), 240(b); art. 56, §§ 456, 459(1); art. 78A, §§ 7(c), 8(4); art. 88D, § 8(j); Agr. art., §§ 7–206(a), 10–303(b); Nat.Res. art., § 3–104(c).

cerning which the term is employed and the object and purpose to be subserved or accomplished." *Powers v. Isley,* 66 Ariz. 94, 183 P.2d 880, 884 (1947); *City of Springfield v. Commonwealth,* 349 Mass. 267, 207 N.E.2d 891 (1965). When used in the context of delegating significant governmental authority, the residual power must be taken seriously and given full possible effect. It is, as we have said, by nature a limitation on the power delegated to a subordinate official, and thus the reserved power to approve necessarily implies a retained discretion in the superior body. When viewed against the backdrop of the fundamental principles of representative democracy, the approval power is not a ministerial or perfunctory one, but has a much deeper political and legal significance.

This is particularly evident in the case before us. The regulations at issue here are not limited to routine internal operations of the police department beyond the interest of the City's elected officials. They govern as well the carrying and use of firearms (Rule 3), the release of information concerning "the general policies of the Department" to the public (Rule 6), secondary employment by departmental personnel (Rule 9), the handling of riots, parades, and other congregations of people (Art. 6), the acquisition of evidence, including the taking of statements and confessions and involvement in wiretaps (Art. 8), arrest procedures (Art. 9, §§ 23–46), and the handling of prisoners (Art. 10). Although these matters are certainly proper subjects for police regulations, they also have an obvious and significant impact upon the public at large and thus upon the public's perception of the City government.

▮ We think that § 15–1 must be construed in that light. The Mayor and City Council who, under the City Charter, are ultimately responsible to the people for the operation of the police department, had good reason to insist that regulations of this type not be put into effect by the Chief of Police alone, without their prior approval. Section 15–1 was the expression of that limitation. Their approval, then,

must be regarded not only as a condition precedent to the valid adoption of the regulations but also as a requirement that is more than "directory." The phrase "subject to the approval of" as used in § 15–1 was intended to mean, and does mean, the same as "with the approval of." *Cf.* 64 Op.Att'y Gen. 218, 224–25 (1979), *but compare Cranmer v. Fidelity & Casualty Co. of New York,* 18 So.2d 220 (La.App. 1944); *Mennig v. City Council,* 86 Cal.App.3d 341, 150 Cal. Rptr. 207 (1978); *Lapica v. Eighth Judicial Dist. Court, Etc.,* 97 Nev. 86, 624 P.2d 1003 (1981).

The very principles that compel this conclusion as to the nature of the condition serve also to militate against the notion that the condition may be satisfied "tacitly" by inaction. To "approve," in this sense, means "to commend, confirm, sanction or to consent to some act or thing done by another." *Powers v. Isley, supra,* 183 P.2d 880, 884; *In Re State Bank of Millard County,* 84 Utah 147, 30 P.2d 211 (1934). It implies an "affirmative sanction" (*In Re Rooney,* 298 Mass. 430, 11 N.E.2d 591, 592 (1937)), the "act of passing judgment, the use of discretion, and the determination as a deduction therefrom." *McCarten v. Sanderson,* 111 Mont. 407, 109 P.2d 1108, 1112 (1941). An affirmative act is required. Indeed, the Ocean City charter itself makes this clear. Section C–406 (former § 176C) requires the Mayor and Council to "keep a journal of its proceedings and enter therein the yeas and nays upon final action *on any question* . . . ." (Emphasis supplied.)

From this analysis, and upon the evidentiary record before the LEOBR board and before us, it is clear that the 1975 regulations, under which Lt. Johnson was charged, had not been validly adopted and therefore were not validly in effect at the time of his LEOBR hearing.

■ Appellants' waiver argument is not based, as it was initially in the circuit court, on the alleged omission of Johnson to raise the question before the LEOBR hearing board. It rests instead on the fact that Johnson knew about the 1975 regulations and lived under them without com-

plaint for four years. Even assuming that the invalidity of the regulations was something that could be waived (a matter we do not decide), we do not regard that as a sufficient basis for waiver. Until the application of the regulations actually placed his job and career in jeopardy, Johnson may have had no reason to investigate or challenge their validity.

### (2) *Other Grounds for Dismissal*

Appellants' second argument is that quite apart from the "technical" invalidity of the regulations, the Chief of Police had "inherent authority" to remove Lt. Johnson and there were sufficient grounds for that removal.

We need not consider what, if any, "inherent authority" the Chief of Police may have to discharge police officers, for whatever his authority may be, it must be exercised in conformance with LEOBR. *DiGrazia v. County Exec. For Mont. Co.,* 288 Md. 437, 418 A.2d 1191 (1980). That Act requires, among other things, that, before a police officer can be dismissed, he is entitled to notice of "the issues involved," a hearing on those issues, and an "opportunity to present evidence and argument with respect to the issues involved." Art. 27, § 730(a) and (b). The decision of the hearing board must be in writing and accompanied by findings of fact, the findings to "consist of a concise statement upon each issue in the case." § 731(a).

The Chief of Police framed the issues in his charges against Lt. Johnson. Each charge, as we observed earlier, involved an alleged violation of one or more of the 1975 regulations. Johnson was not charged with general incompetence or common law misfeasance, malfeasance, or nonfeasance. He was charged with violating specific regulations; and the evidence taken and the findings made by the board related to those regulations. Appellants cannot be heard now to argue that other grounds existed. To permit that would make a mockery not only of LEOBR but of fundamental due process of law. Appellants are limited to

the charges that were made and litigated; and, as those charges had no legal basis, the dismissal was improper.

### (3) *Mandamus*

■■■■ Appellants correctly point out that mandamus is an extraordinary remedy that is not to be used to enforce a "doubtful right" or to compel a discretionary act. That avails them little, however. Mandamus clearly lies "to reinstate a person in an office from which he has been illegally removed," which is precisely what occurred here. *Forami v. Reynolds,* 248 Md. 246, 253, 236 A.2d 20 (1967); *Field v. Malster,* 88 Md. 691, 41 A. 1087 (1898); *Miles v. Stevenson,* 80 Md. 358, 30 A. 646 (1894). Given the invalidity of the regulations and thus their improper enforcement against Johnson, his right to reinstatement was not "doubtful" and the Chief's obligation was not a discretionary one.

### (4) *Reopening The Case*

■■■ On February 15, 1983—more than two years after the second round of hearings held especially to determine whether the regulations were validly adopted—appellants moved to reopen the record for an additional evidentiary hearing on that issue. After four years, they suddenly discovered two witnesses—one the former City Solicitor, now a circuit court judge, the other the former Chief of Police, now a city councilman—who have "stated independently that their recollection is that the Rules and Regulations were presented to the Council and were approved." With considerable ill grace, appellants now complain that the court denied that motion.

The two witnesses whose testimony was belatedly sought were well known to appellants at the time of the November, 1980 hearing, and in light of the city charter requirement that actions of the Mayor and City Council be entered in the journal (*see ante*) their testimony would have been of doubtful relevance in any event. We find no abuse of discretion.

JUDGMENT AFFIRMED; APPELLANTS TO PAY THE COSTS.