470 A.2d 1322

**FOSTER & KLEISER**

v.

**BALTIMORE COUNTY, Maryland.**

**No. 535, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

Feb. 8, 1984.

Robert B. Kershaw, Baltimore, with whom were Jervis S. Finney, William L. Balfour and Ober, Kaler, Grimes & Shriver, Baltimore, on the brief, for appellant.

Stanley J. Schapiro and Patrick D. Hanley, Asst. County Attys. for Baltimore County, with whom was Malcolm F. Spicer, Jr., County Atty. for Baltimore County, on the brief, for appellee.

Argued before GILBERT, C.J., and LOWE and ADKINS, JJ.

ADKINS, Judge.

Section 12–208 of the Real Property Article (Annotated Code of Md., 1981 Repl. Vol. and 1983 Supp.) provides in pertinent part:

> (a) Notwithstanding any other provision of law, if a public agency acquires any interest in land, the public agency shall acquire at least an equal interest in all buildings, structures, or other improvements, located on the land acquired which it requires to be removed from the land or which it determines will be adversely affected by the use to which the land will be put.
>
> (b)(1) For the purpose of determining just compensation to be paid for any building, structure, or other improve-

ment required to be acquired by subsection (a), the building, structure, or other improvement shall be deemed a part of the land to be acquired notwithstanding the right or obligation of a tenant, as against the owner of any other interest in the land, to remove the building, structure, or improvement at the expiration of his term. . . .

Appellant Foster & Kleiser's principal claim on appeal is that the Circuit Court for Baltimore County (Fader, J.) erred when it held that appellee Baltimore County had not acquired an interest in certain land prior to the time Foster & Kleiser was required to remove its billboards therefrom. Under its view, it was entitled to compensation for the signs under § 12–208. As a secondary argument, Foster & Kleiser alleges error because the trial court held that appellant was not entitled to compensation for the signs when Baltimore County unquestionably had acquired an interest in the property upon which the signs were located, even though its leasehold interest in the property had been terminated well before that date.

The facts are essentially undisputed. By virtue of a fifteen year lease commencing May 1, 1979, Foster & Kleiser maintained certain advertising signs on a tract of land in Baltimore County owned by County Mutual Acceptance Corporation. The lease was terminable upon sixty days prior written notice from either party.

The leased premises had been available for sale prior to February, 1981. In that month, an agent of Baltimore County submitted to County Mutual (through a broker) a document under which the County was to purchase the land for $183,000. Baltimore County intended to use the land for a park and ride facility. Although dated February 7, 1981, the document was apparently executed by County Mutual on February 6. It included a clause reading:

In the event that this Agreement is not approved by the Baltimore County Council, this Agreement shall become null and void and all deposit moneys and down payments shall be returned to [County Mutual].

At Baltimore County's request, County Mutual on February 11, 1981, invoked the termination provisions of Foster & Kleiser's lease and in writing advised the latter that the lease would be terminated sixty days thereafter (April 12, 1981) whereupon the signs would have to be removed from the premises. On April 20, 1981, the contract of sale was approved by the Baltimore County Council. It was executed by County Executive Donald Hutchinson on April 23.

In the meantime, Foster & Kleiser had not removed the signs. Instead, it informed County Mutual and Baltimore County that it would not remove them until assured of the payment of compensation under § 12–208 of the Real Property Article.

On May 10, County Mutual sued Foster & Kleiser in the District Court in Baltimore County, seeking summary ejectment. That court on June 4 issued a writ of restitution directing removal of the signs. Foster & Kleiser appealed to the Circuit Court for Baltimore County which affirmed the District Court judgment on July 6. Baltimore County and County Mutual went to settlement on July 18. Foster & Kleiser removed the signs on July 28.

Pausing only to catch its breath, and to prepare the necessary pleadings, Foster & Kleiser next proceeded to sue Baltimore County in the circuit court. So far as is material to this appeal, it prayed for a declaration that it was entitled to compensation under § 12–208. It also requested damages and other monetary relief.

Baltimore County resisted the suit on a number of grounds. It asserted that the lease between County Mutual and Foster & Kleiser was merely a license, so that Foster & Kleiser had no standing to claim damages under § 12–208. It contended that § 12–208 applied only to condemnation proceedings, and not to acquisition by purchase. It asserted that the advertising signs were not buildings, structures, or other improvements within the contemplation of that section. On all these issues, the circuit court found in favor of Foster & Kleiser. For purposes of this appeal, we shall

assume, without deciding, that these holdings were correct. But the court also held that Baltimore County had acquired an interest in the property at the earliest on April 20, 1981, when the County Council approved the contract. It further held that since Foster & Kleiser's lease had terminated prior to that date, it was due no compensation under § 12–208. As we have noted, it is this conclusion that Foster & Kleiser now attacks.

The argument runs thus: Baltimore County's submission of the contract of sale to County Mutual was an offer to purchase the land in question, which offer was accepted by County Mutual when it executed the contract on February 6. As of that date, there was a binding contract between the parties, subject to approval of the County Council. Since the contract was in writing and signed by County Mutual, which Foster & Kleiser characterizes as "the party to be charged," Baltimore County could have enforced the contract under the Statute of Frauds. Real Property Art. § 5–104. Therefore, Baltimore County acquired an interest in the land while Foster & Kleiser was still a tenant, and must pay compensation for the advertising signs.

Baltimore County's response is that the contract signed by County Mutual was the offer, which was not accepted by Baltimore County until after the termination of Foster & Kleiser's tenancy on April 12. Up until the date of acceptance (April 20 or 23) County Mutual could have withdrawn the offer at any time. Until the date of acceptance, there was in fact no contract (for purposes of the Statute of Frauds or for any other purpose) and in the absence of a contract the County had no interest in the land on the critical date of April 12.

For purposes of argument, we accept Foster & Kleiser's contention that a valid and subsisting contract for the purchase of land gives the contract purchaser an interest in that land within the contemplation of § 12–208(a). But in our judgment, no such contract existed until, at the earliest, April 20, when the contract was approved by the County Council.

If we adopt the County's analysis of the sequence of offer and acceptance, this result is obvious. Clearly, if County Mutual made the offer when it signed the contract and returned the document to Baltimore County, the latter did not accept that offer until the Council had acted. Nor does this result change if we attempt to apply the analysis espoused by Foster & Kleiser. This is because the contract prepared by Baltimore County and submitted to County Mutual did not, in our view, constitute an offer. It was merely a step in a course of preliminary negotiations. Since it was not an offer, it could not have been accepted by County Mutual. We explain.

Ordinarily, a contract is formed when an unrevoked offer made by one person is accepted by another. An offer "is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." 1 Restatement Contracts (2d) § 24 (1979). Fundamental to this view of the nature of an offer is the notion that it involves placing in the hands of the recipient the apparent power to conclude a contract without further action by the offeror. *See Maryland Supreme Corp. v. The Blake Co.*, 279 Md. 531, 539, 369 A.2d 1017 (1977). Therefore, "[a] manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of consent." 1 Restatement Contracts (2d) § 26 (1979).

As Professor Corbin puts it:

In the process of negotiation a party may use words that standing alone would normally be understood to be words of 'contract', at the same time limiting them in such a way as to show that a subsequent expression of assent on his part is required. In such case the expression is neither an operative offer nor an operative acceptance; it is preliminary negotiation.

1 *Corbin On Contracts* § 22 p. 64 (1963). Thus in *Dillon v. AFBIC Dev. Corp.*, 420 F.Supp. 572 (S.D.Ala.S.D.1976), *aff'd*

*in part and rev'd in part,* 597 F.2d 556 (5th Cir.1979)[1] a potential seller signed a contract which, at the potential buyer's insistence, contained a clause that "Mr. Dillon [the buyer's husband] has to approve the sale of Lot 30 * * * subject to approval on 5–26–73 by Mr. Dillon." The court held that there was no offer but merely preliminary negotiations; no contract could be formed by the seller's purported acceptance of Mrs. Dillon's purported offer because something more than the seller's assent was required, namely, Mr. Dillon's approval. *Compare People's Drug Stores, Inc. v. Fenton Realty Corp.,* 191 Md. 489, 62 A.2d 273 (1948) (no contract formed when Fenton "offered" to erect a building and lease it to People's, with plans and specifications to be "approved" by People's and form of lease to be "approved" by Fenton).

When we apply these principles to the case at bar, the result is clear. The document submitted to County Mutual by Baltimore County was subject to approval by the County Council. This was provided for by a clause in the contract and in any case was required by § 715 of the Baltimore County Charter which in pertinent part reads:

... Any contract ... must be approved by the county council before it is executed if the contract is

(1) For the purchase of real or leasehold property where the purchase price of the property is in excess of $5,000. ...

Baltimore County Code 1978 (1982 Cumulative Supplement)

This statutory language was as much a part of the document prepared by Baltimore County as though it had been expressly incorporated therein. *Downing Dev. Corp. v. Brazelton,* 253 Md. 390, 252 A.2d 849 (1969). The statutory requirement of approval by the County Council was a condition precedent to the formation of any contract between Baltimore County and County Mutual where, as here, the proposal was for the purchase of real property and the

---

1. The point for which we cite the case was not addressed on appeal to the Fifth Circuit.

purchase price exceeded $5,000. As Judge Wilner has recently pointed out

> It is not uncommon for statutes setting forth the structure and powers of government to require that certain acts, or the exercise of certain authority, by subordinate public officials be subject to approval by other officials who are superior to them. This is simply a way of conditionally delegating authority, with the higher official—the one having the closer nexus to the electorate—maintaining ultimate control.

*Mayor and City Council of Ocean City, Maryland, et al. v. Johnson*, 57 Md.App. 502, 513, 470 A.2d 1308 (1984).

> Moreover,
> When [the term "approval" is] used in the context of delegating significant governmental authority, the residual power must be taken seriously and given full possible effect. It is, as we have said, by nature a limitation on the power delegated to a subordinate official, and thus the reserved power to approve necessarily implies a retained discretion in the superior body.

*Id.* at 514, 470 A.2d 1308.

In short, there could be no binding or enforceable contract here until approval by the County Council had occurred. Therefore, what Foster & Kleiser claims was an offer submitted to County Mutual by Baltimore County was not an offer, but merely part of preliminary negotiations. County Mutual could not have accepted this "offer" without further action by the County, that action being approval by the County Council, as required by the County Charter.

That only preliminary negotiations were involved is demonstrated by another aspect of the case: Baltimore County's insistence that Foster & Kleiser's lease be terminated before Council approval of the purchase arrangements. While Foster & Kleiser says this insistence was an illegal attempt by the County to evade the provisions of § 12–208, we see it otherwise. The County was involved in negotiating a transaction the costs of which it wanted to keep to a minimum.

An opportunity to achieve this arose because of the termination provision in Foster & Kleiser's lease from County Mutual. That the Baltimore County Council chose not to approve the contract until County Mutual had invoked this provision illustrates the prior tentative nature of negotiations between the County and County Mutual, and further undercuts argument that the document submitted by the County in early February was a firm offer. Furthermore, in its negotiations, the County did not wrongfully evade § 12–208; it merely took legitimate advantage of the existing termination clause in the lease.

We hold, therefore, that for purposes of § 12–208 Baltimore County did not acquire an interest in the land here involved until after Foster & Kleiser's lease had terminated. Therefore, Foster & Kleiser was not entitled to compensation under that section. We reject Foster & Kleiser's claim that it should receive compensation because its signs were still on the property on April 20 and on April 23. By those dates, its interest in the land had been lawfully terminated. We do not think § 12–208 contemplates compensation of one who retains structures on land despite the lawful termination of his interest therein.

JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.