STATE of Minnesota, by Hubert H. HUMPHREY, III, its Attorney General, petitioner, Respondent,

v.

William H. CARD, et al., Lower Court Respondents,

Major Media Management Corporation, successor in interest to Naegele, Inc., Appellant.

No. C4–87–915.

Court of Appeals of Minnesota.

Oct. 13, 1987.

---

Hubert H. Humphrey, III, Atty. Gen., John C. Jeppesen, Sp. Asst. Atty. Gen., St. Paul, for petitioner, respondent.

Richard T. Ince, Marvin A. Liszt, Ince & Liszt, P.A., Minneapolis, for appellant.

Heard, considered and decided by HUSPENI, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

FORSBERG, Judge.

This appeal arises out of a condemnation proceeding commenced by respondent State of Minnesota in July, 1986. The petition originally named appellant Major Media Management Corporation, successor in interest to Naegele, Inc., as a party holding a lessee's interest in parcel 297, land which the state sought to acquire.

In December, 1986, the state dismissed the proceeding as to parcel 297. Major Media thereafter moved for an order vacating the dismissal and compelling the state to proceed with a hearing to determine damages. This appeal is from the district

court's order denying that motion. We affirm.

## FACTS

Major Media, as successor in interest to Naegele, Inc., held interests in parcel 297 (located in Anoka County) under the terms of two billboard leases. Both leases provided that "[i]f property [is] sold or developed Naegele will remove or relocate, or re-negotiate with new owners within ninety (90) days."

In January, 1986, the state began negotiations with the fee owner of parcel 297 for the direct purchase of the property for highway purposes. By letter, the state notified Major Media that it would be entitled to relocation benefits since it was a lessee at the time direct purchase negotiations commenced. Major Media responded orally that it would not accept relocation costs and that it wished to proceed to condemnation.

While these negotiations were still pending, this condemnation proceeding was commenced. The state included parcel 297 in the proceeding in the event the direct purchase negotiations proved unsuccessful. Major Media was therefore named as an interested party with respect to parcel 297 and served with a notice of condemnation.

On June 9, 1986, and prior to the hearing on the condemnation petition, the fee owner executed an offer to sell parcel 297 to the state and delivered a warranty deed. Several days before, counsel for the fee owner had notified Major Media by mail of the sale of parcel 297 and had indicated that it should remove, relocate, or renegotiate within 90 days as required by the lease. On June 20, a similar notice was sent regarding the other lease.

When the state presented its petition on July 29, 1986, Major Media requested the right to be heard before the court-appointed commissioners. No objection was made to the taking itself and the state's petition was granted.

On September 29, 1986, the state accepted the fee owner's offer to sell and recorded the warranty deed about a week later.

Because this direct purchase rendered the condemnation proceeding unnecessary as to parcel 297, the state dismissed that parcel from the proceeding in December, 1986.

## ISSUE

Is Major Media entitled to damages in eminent domain?

## ANALYSIS

■ A lessee may contract away its rights to damages in the event the property is acquired by eminent domain. *See Naegele Outdoor Advertising Co. v. Village of Minnetonka*, 281 Minn. 492, 503, 162 N.W.2d 206, 214 (1968) (citing *In re Site for Library in City of Minneapolis*, 254 Minn. 358, 95 N.W.2d 112 (1959); *In re Third Street Improvement in City of St. Paul*, 178 Minn. 552, 228 N.W. 162 (1929)). Leases may also contain broader provisions for termination upon the happening of a particular event. *See State ex rel. Gillilian v. Municipal Court of City of Crookston*, 123 Minn. 377, 143 N.W. 978 (1913) (farm lease provision for termination in case of sale); *Johnson v. Carlin*, 121 Minn. 176, 141 N.W. 4 (1913) (provision for termination on notice in case of sale).

The lease in this case unambiguously states that "[i]f property sold or developed [Major Media] will remove or relocate, or re-negotiate with new owners within ninety (90) days." The only meaning which can be given to this language is that upon sale of the property the lease terminates because Major Media must remove or relocate its billboards or renegotiate a new lease with the new owners.

■ Major Media raises a number of arguments on appeal which fail to address the threshold issue of whether it still had an interest in the property at the time it was acquired by the state. It first argues that it is entitled to compensation for its interests in the property due to the state's involvement in the fee owner's "attempted" lease cancellations. Major Media contends that the state improperly conditioned its acquisition of the property upon the fee owner's cancellation of its leaseholds.

In support of this position it cites *U.S. v. 12.18 Acres of Land in Jefferson County, Kansas,* 623 F.2d 131 (10th Cir.1980). In *12.18 Acres,* the government condemned railroad land five years after the railroad had given termination notices to its lessees which provided for termination without cause on 30 days' notice. The tenth circuit found that the leases had been terminated pursuant to a railroad-government agreement which required the property to be free of encumbrances. It proceeded to conclude that although the leases had been terminated prior to commencement of the condemnation action, the lessees were entitled to intervene in the proceeding and have their claims valued.

The tenth circuit stated:

> In [*Almota Farmers Elevator & Warehouse Co. v. U.S.,* 409 U.S. 470, 93 S.Ct. 791, 35 L.Ed.2d 1 (1973)], the Court noted that the taking of both estates was "one act" which required proceedings against owners of two interests. Here, the method of taking was altered by the agreement but the substance and purpose were the same. The railroad's title had vested in the Government in the case before us, which is a different sequence than in *Almota.*

> \* \* \* \* \* \*

> We hold that the "interests" of the [lessees], as that term is used in *Almota,* existed at the time the agreement with the railroad was signed. For all practical purposes the "one taking" took place at that time. The agreement was to acquire the [property] and the leaseholds. The only real difference was the time span. Thus we equate the agreement with the taking in *Almota* for it had the very same purpose.

*12.18 Acres,* 623 F.2d at 133.

We find *12.18 Acres* distinguishable from the facts of this case. Here, the state initiated negotiations for the direct purchase of parcel 297 prior to commencement of the condemnation proceeding. Moreover, the lease provision in this case is self-executing; once notified of the sale of parcel 297, Major Media had 90 days within which to remove, relocate, or renegotiate.

Thus, Major Media no longer had an interest in the property at the time the state acquired it by direct purchase.

■ Major Media further argues that under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (URA), 42 U.S.C. §§ 4601–4655, the state must condemn and buy the signs. We disagree. Although Major Media is entitled to receive relocation costs, its right to receive compensation in eminent domain ceased when the state directly purchased the property.

■ Major Media finally argues that Minn.Stat. § 173.17, subd. 4 requires the state to acquire its signs by purchase, gift, or eminent domain. Chapter 173 is applicable only to condemnation brought for the purpose of condemning billboards which were in lawful existence on June 8, 1971, and have subsequently become nonconforming. Minn.Stat. § 173.17 (1986). Here, there is no evidence that the billboards in question were nonconforming or that they were in lawful existence on June 8, 1971.

### DECISION

The trial court's denial of appellant's motion to vacate dismissal of parcel 297 from the condemnation proceeding is affirmed.