# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-01246-SCT
## CONSOLIDATED WITH
## NO. 2003-CA-01248-SCT

*ELLER MEDIA COMPANY*

*v.*

*MISSISSIPPI TRANSPORTATION COMMISSION*

| | |
|---|---|
| DATE OF JUDGMENT: | 5/21/2003 |
| TRIAL JUDGE: | HON. MILLS E. BARBEE |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY SPECIAL COURT OF EMINENT DOMAIN |
| ATTORNEYS FOR APPELLANT: | MARK D. HERBERT |
| | LISA ANDERSON REPPETO |
| ATTORNEYS FOR APPELLEE: | BARRY STUART ZIRULNIK |
| | HOLLAMAN MARTIN RANEY |
| SPECIAL ASSISTANT ATTORNEY GENERAL: | BILLY DON HALL |
| NATURE OF THE CASE: | CIVIL - EMINENT DOMAIN |
| DISPOSITION: | AFFIRMED - 07/29/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., CARLSON AND DICKINSON, JJ.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     Eller Media Company was granted compensation for loss, through eminent domain, of its billboards and its leasehold interest in two parcels of real property in DeSoto County it leased from Entergy Service, Inc. (Entergy), and The Prudential Insurance Company (Prudential), respectively. Eller claims that the compensation awarded by the DeSoto County Special Court of Eminent Domain was inadequate and that

summary judgment for the Mississippi Transportation Commission (MTC) should not have been granted.

We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2.    This dispute is more easily understood and resolved by first establishing a time line of relevant events:

| | |
|---|---|
| September 1, 1994 | Eller, through its predecessor-in-interest, Tanner Outdoor, entered into a lease agreement with Entergy, for the purpose of erecting two outdoor advertising sign structures upon the leased premises. |
| November 1, 1997 | Eller, through its predecessor-in-interest, Tanner, entered into a lease agreement with Prudential, for the purpose of erecting one outdoor advertising sign structure upon the leased premises. |
| March 7, 2000 | **(DATE OF PRUDENTIAL COMPLAINT)** MTC filed its Complaint, seeking to acquire through eminent domain, real property owned by Prudential, as well as the leasehold interest and a sign structure owned by Eller. |
| March 8, 2000 | **(DATE OF ENTERGY COMPLAINT)** MTC filed a Complaint, seeking to acquire through eminent domain, real property owned by Entergy, as well as the leasehold interest and two sign structures owned by Eller. |
| July 10, 2000 | The Special Court of Eminent Domain entered orders in both the Prudential and Entergy matters granting MTC right of immediate title and possession upon the deposit of 85% of the value of the property condemned, as determined by a court appointed appraiser. |
| August 1, 2000 | **(DATE OF POSSESSION)** MTC deposited the required funds and took title to, and possession of, both the Entergy and Prudential property, including Eller's leasehold interest and sign structures. |
| August 27, 2001 | MTC filed a Motion for Partial Summary Judgment in the Prudential matter seeking to adjudicate that the only remaining issue is the determination of the cost new, less depreciation, of the sign structures. |
| October 12, 2001 | MTC filed a nearly identical Motion for Partial Summary Judgment in the Entergy matter. |
| March 1, 2002 | The Special Court of Eminent Domain entered orders granting MTC's Motion in both the Prudential and Entergy matters.  Specifically, the court held that "the only |

2

remaining issue is the determination of the value of a new billboard, less depreciation, that was acquired as a result of these proceedings."

March 28, 2003[1]   The parties stipulated that the value of each billboard at issue, using the cost approach, was $57,700.00.

April 1, 2003   MTC filed a Motion for Summary Judgment in both actions, requesting the court to set the amount of just compensation at $57,700.00 per sign structure (cost of a new sign, less depreciation).

May 21, 2003   The Special Court of Eminent Domain granted both summary judgments.

## DISCUSSION

¶3.    Under M.R.C.P. 56, summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." When reviewing a trial court's decision "to grant summary judgment, this Court will conduct a *de novo* review." *Lamar Corp. v. State Highway Comm'n*, 684 So. 2d 601, 604 (Miss. 1996) (citations omitted). In determining whether the trial court appropriately granted summary judgment this Court reviews all evidence "in a light most favorable to the non-moving party." *Id.*   "[T]he burden of demonstrating that no genuine issue of fact exists is on the moving party.  That is, the non-movant should be given the benefit of every reasonable doubt."  *Short v. Columbus Rubber & Gasket Co.*, 535 So. 2d 61, 64 (Miss. 1988).

¶4.    This appeal of summary judgment presents us with the following issues:

(1) Whether the trial court erred in granting partial summary judgment;

(2)  Whether the trial court erred in its interpretation of the leases; and

(3)  Whether the trial court erred in granting summary judgment.

---

[1]The reason for the year delay was an intervening application for interlocutory appeal to this Court, which was denied.

These issues are inextricably intertwined and, therefore, will be discussed together.

*Eminent Domain.*

¶5.     Article 3, Section 17 of the Mississippi Constitution provides that "[p]rivate property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; . . ."

¶6.     Section 43-37-11 of the Mississippi Code Annotated addresses the constitutionally required "due compensation" for "structures," as follows:

> (1) Where any interest in real property is acquired, an equal interest in all buildings, structures, or other improvements located upon the real property so acquired and which are required to be removed from such real property or which are determined to be adversely affected by the use to which such real property will be put shall be acquired.
>
> (2) *For the purpose of determining the just compensation to be paid for any building, structure or other improvement required to be acquired as above set forth, such building, structure or other improvement shall be deemed to be a part of the real property to be acquired* notwithstanding the right or obligation of a tenant, as against the owner of any other interest in the real property, to remove such building or improvement at the expiration of his term. The *fair market value which such building, structure or improvement contributes to the fair market value of the real property to be acquired, or the fair market value of such building, structure or improvement for removal from the real property, whichever is the greater, shall be paid to the tenant therefor.*

Miss. Code Ann. § 43-37-11(1),(2) (Rev. 2000) (emphasis added).

¶7.     Eller analyzes the statute as follows: When real property is acquired through eminent domain, an adversely affected sign structure located on the real property must also be acquired. The sign structure cannot be valued in the abstract because it is "deemed" to be a part of the real property, notwithstanding anything to the contrary in any lease between the parties. That said, Eller maintains that compensation under the statute for the structure is the greater of: (a) the value which it contributes to the fair market value

4

of the land; or (b) the fair market value of the structure itself.  In effect, says Eller, the fair market value of the sign is to be determined as if it were owned by the landowner rather than the tenant.

¶8.     MTC contends that Miss. Code Ann. § 43-37-11 does not apply at all, because the leases terminated by their own terms, and because Eller contracted away its right to receive any compensation, other than the value of the structures.  Therefore, says MTC, Eller is not entitled to compensation except for the cost new, less depreciation, of the billboard sign structures.

*The Leases.*

¶9.     Both lease agreements in issue addressed eminent domain.  Paragraph 14 of the Prudential Lease states:

> In the event that all or a part of the Leased Premises is taken or condemned for public or quasi-public use under any statute or by the right of eminent domain or, in lieu thereof, all or a part of the Leased Premises is sold to a public or quasi-public body under threat of condemnation, *this Lease shall terminate* as to the part of the Leased Premises so taken, condemned or sold on the date possession is transferred to the condemning authority.  All Rent for such part shall be paid up to date of transfer of possession to the condemning authority, and *all compensation awarded or paid for the taking or sale in lieu thereof shall belong to and be the sole property of Lessor* and Lessee shall have no claim against lessor for the value of any unexpired portion of the lease Term; provided, however, that *Lessee shall be entitled to any award expressly made to Lessee.*

(emphasis added).

¶10.    Paragraph 7 of the Entergy Lease states:

> (A)   If all or a substantial part of the Premises shall be taken by right of eminent domain, *this Lease shall terminate* and the rent and all other charges which are TENANT's responsibility shall be abated during the unexpired portion of this Lease, *effective as of the date when the physical taking of the Premises occurs*. . . .
>
> (B)   *TENANT shall not be entitled to any part of the payment or award for any such taking*; provided, however, that *TENANT may file a claim for any taking of its Outdoor Advertising Signs*, trade fixtures or removable personal

5

property owned by TENANT or moving expenses or ***damages for cessation or interruption of TENANT's business***.

(emphasis added).

*Partial Summary Judgment.*

¶11.    Based on the language of these provisions, and the statutory language providing for compensation for structures, MTC filed motions for partial summary judgment, asserting that the only remaining issue was the determination of the cost new, less depreciation, of the Eller sign structures.

¶12.    The Special Court of Eminent Domain entered orders granting both motions for partial summary judgment.  Eller filed motions to reconsider in both matters, and submitted the affidavit of its designated expert appraiser, Dr. Rodolfo Aquilar, who opined: "It is my expert opinion that the sign structure at issue . . . should be appraised using the cost, income and sales comparison approaches notwithstanding the eminent domain clauses in the applicable lease agreements."

¶13.    The trial court denied the motions for reconsideration and affirmed its earlier ruling granting partial summary judgment.  This ruling by the trial court is the crux of Eller's appeal.

¶14.    Eller does not dispute MTC's taking of its sign structures or its leasehold interest.  Rather, Eller claims the trial court's partial summary judgment improperly restricted the allowed valuation method to the "cost" approach.[2]  Eller claims it should have been permitted to present additional evidence using the "market data/sales comparison" approach, and the "income" approach to valuation.  In support of its argument, Eller cites ***Crocker v. Miss. State Highway Comm'n***, 534 So. 2d 549 (Miss. 1988), where this Court stated:

---

[2]The "cost approach" to property valuation is a determination of the cost to replace the property, less applicable depreciation.

> We regard it as settled dogma within the appraisal profession that fair market value is established by reference to what has come to be known as the appraisal process. That process mandates careful consideration of not just one but three separate and distinct approaches to value; the income approach, the cost approach and the market data or sales comparison approach (citations omitted) . . . Indeed, any expression of value solely by reference to but one of the three standard of approaches to value should generally be taken with a grain of salt.

*Id.* at 553. Eller also cites *Frierson v. Delta Outdoor, Inc.,* 794 So. 2d 220 (Miss. 2001), in support of its argument that it should not have been limited to the cost approach valuation method. In *Frierson*, this Court recognized there are "many different approaches to establishing value including, but not limited to use of comparative sales, cost, income streams, and a combination of these and various other methods." *Id.* at 226. We find that Eller's reliance on *Crocker* and *Frierson* is misplaced.

¶15.     *Crocker* involved valuation of commercial property taken from the owner. Writing for the court, Justice Robertson, in obiter dictum, properly pointed out that, in such cases, all three methods of valuation should be considered. *Crocker,* 534 So. 2d at 553.    Certainly, when appraising an owner's interest in commercial property, all three methods of valuation could be relevant and useful and, at a minimum, should be considered. It is clear, however, from a full reading of *Crocker*, that this Court did not hold – nor did it intend to hold – that all three methods of valuation must be considered in every appraisal. The folly in such a proposition is easily appreciated when one considers the appraisal of a residence or a single cemetery plot, wherein valuation using the income approach would be not only useless and irrelevant, but impossible.

¶16.     Unlike the landowner in *Crocker* which owned the commercial real estate, Eller is the owner of a sign structure which was placed on leased property. The market approach would be wholly useless, since the market value of the billboards could certainly not exceed the value of a new sign, less depreciation. For market value to exceed replacement cost, there must be some marketable feature which

7

causes the increased value. For instance, in the case of a billboard, that feature could be location.[3]

However, Eller's leases both terminated pursuant to contractual provisions agreed to by Eller. Therefore, since Eller lost its locations pursuant to its own agreement, any value added by location would be irrelevant and inadmissible in this case. These termination restrictions on the lease agreement were bargained for and reflected in the price paid by Eller.

¶17. In *Frierson*, Delta Outdoor, Inc., signed a five-year lease of property owned by Ethel Frierson, for the purpose of erecting billboards. Frierson then decided to erect her own billboards, and she reneged on the lease with Delta. Speaking for the Court, Justice Diaz stated that Delta could not establish damages based solely on its own estimate of "the extent to which [it] was injured." *Id*. at 226. These facts, and our holding in *Frierson*, hardly apply here.

¶18. MTC contends that Eller is restricted to the cost approach because the lease terminated by its own terms. Therefore, Eller did not have a leasehold interest in the land. In support of its argument, MTC cites *City of Muskegon v. Lipman Inv. Corp.*, 239 N.W.2d 375 (Mich. Ct. App. 1976), *State v. Card*, 413 N.W.2d 577 (Minn. Ct. App. 1987), and *Foster & Kleiser v. Baltimore County*, 470 A.2d 1322 (Md. Ct. Spec. App. 1984).

¶19. *City of Muskegon* is analogous to the case sub judice. There, the lease contained a termination provision in the event of eminent domain. 239 N.W.2d at 378. The lease also stated: "Nothing herein shall be construed to prevent Lessee from pursuing its separate remedy against the involved condemnor

---

[3]A billboard in a very good location would certainly have a higher market value than the same billboard in a poor location. We do not mean to imply that Eller asserted that the location of the signs increased the market value of its signs. Indeed, in this appeal, Eller offers no evidence of any kind of any such marketable feature which would cause a market valuation to be relevant. We raise this issue only to demonstrate the futility in adopting Eller's position.

for the value of Lessee's interest, loss or damage." ***Id.*** As in the case sub judice, there was no ambiguity regarding the termination of the lease by condemnation. However, the lessee argued that it reserved a separate remedy against the condemnor and therefore reserved its right to share in the condemnation award. ***Id.*** The court concluded:

> When read together with the provision terminating the lease upon condemnation and waiving the lessee's right to participate in the award, the lessee's 'separate remedy' can only refer to a claim apart from that derived from the leasehold interest in the condemned premises. *The separate remedy of the lessee could be a claim for the decreased value of the severed trade fixtures.*

***Id.*** (emphasis added).

¶20.     In ***Card***, the lease terminated by its own terms upon the sale of the land. ***Card***, 413 N.W.2d at 580. The state purchased the property, and the billboard company argued it was entitled to just compensation of its billboard sign structures. ***Id.*** The court stated: "A lessee may contract away its rights to damages in the event the property is acquired by eminent domain." ***Id.*** at 579. Furthermore, "Leases may also contain broader provisions for termination upon the happening of a particular event." ***Id.*** The court concluded the company was entitled to relocation costs; however, "its right to receive compensation in eminent domain ceased when the state directly purchased the property." ***Id.*** In ***Card***, the billboard company's lease terminated when the property was sold. In the case sub judice, Eller contracted away some of its rights to compensation in the event of eminent domain.

¶21.     In ***Foster & Kleiser***, the court rejected the billboard company's argument that it was entitled to compensation for the sign structures because the signs remained on the property after the county acquired an interest in the property. ***Foster & Kleiser***, 470 A.2d at 1326. Maryland's compensation statute is

9

very similar to Miss. Code Ann. § 43-37-11. *See* 470 A.2d at 1323. However, the company was not entitled to compensation for the billboard structure because the lease terminated.

¶22.    Even though *Foster & Kleiser* and *Card* both deat with the purchase of property and not condemnation, both contained termination provisions which were invoked and the courts concluded that no compensation was due. In the case sub judice, both leases contained termination provisions in the event of eminent domain; and therefore, the leases terminated by their own terms. As in *City of Muskegon*, Eller agreed it was not entitled to any of the condemnation award of the lessor and therefore, the only compensation to which Eller is entitled is the value of the sign structure; that is, the cost new, less depreciation.

¶23.    Eller had no leasehold interest because its leases terminated.[4] Eller had three billboards which were taken, and for which just compensation is due. That compensation can only be calculated using the cost analysis, which will provide Eller with the new cost of its signs, less depreciation.

¶24.    For these reasons, we find that the trial court properly granted the partial summary judgment.

*Summary Judgment.*

¶25.    Having prevailed on its motion for partial summary judgment, MTC filed a Motion for Summary Judgment in the Prudential matter, pointing out that the parties had entered into and filed a stipulation that the cost new, less depreciation, for the billboard on the property was $57,700.00, and that it was entitled to judgment as a matter of law. MTC filed a similar motion in the Entergy matter. The trial court granted

---

[4]Eller did have a leasehold interest from the date of valuation (filing of the Complaints), which occurred in early March, 2000, until the date of possession (date of payment), which occurred on August 1, 2000. However, as discussed infra, Eller suffered no loss because it continued to use the property during this period of time.

both MTC's motions for summary judgment, awarding Eller $57,700.00, for each of the three billboards. We find that the trial judge was correct in granting the motions for summary judgment.

¶26. Having determined the issue of valuation of the billboards, we now turn to the issue of whether MTC condemned any compensable tenancy belonging to Eller.

*Tenancy.*

¶27. The Energy Lease provided that: "The term of this Lease (the "Term") shall be for 5 years, to commence October 1, 1994 (hereinafter called the "Commencement Date"). The Term of this Lease shall end on August 31, 1999, (the "Expiration Date") and TENANT shall have no right to possession of any portion of the Premises after the Expiration Date." Paragraph 15 of the Energy Lease stated that if Eller remains in possession of the premises after the expiration of the lease, Eller becomes a month-to-month tenant and such tenancy may be terminated upon thirty (30) days prior written notice. This language is clear, unambiguous and enforceable. Eller was a month-to-month tenant under the Energy lease, and had a leasehold interest at the time MTC filed its complaint, which continued until the expiration of the 30-day notice period.

¶28. The Prudential Lease provided that: "The term of the lease shall commence November 1, 1997 and expire October 31, 2007." Pursuant to this provision, Eller did have a leasehold interest under the Prudential Lease at the time MTC filed the complaint on March 7, 2000. This leasehold interest continued until the physical taking which occurred on August 1, 2000. Eller claims it is entitled to compensation for this period of time. We will briefly address this issue.

*Value of the Tenancy.*

¶29. Eller is correct that it is entitled to just compensation for the value of its leaseholds which were taken by condemnation. However, Eller remained in possession of the properties during the periods of time

11

in question.  Thus, Eller lost nothing.  Having lost nothing, Eller's argument that it should, nevertheless, be compensated, is unpersuasive.

## CONCLUSION

¶30.   For these reasons, we affirm the trial court's judgments.

¶31.   **AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON AND RANDOLPH, JJ., CONCUR.  DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**