680 A.2d 1052

**FRATERNAL ORDER OF POLICE, MONTGOMERY COUNTY LODGE NO. 35 et al.**

v.

**Carol A. MEHRLING.**

**No. 86, Sept. Term, 1995.**

Court of Appeals of Maryland.

Aug. 5, 1996.

**156**

George B. Driesen (William W. Thompson, II, Zwerdling, Paul, Leibig, Kahn, Thompson & Wolly, P.C., on brief), Washington, DC, for Appellants.

Ramona Bell–Pearson, Asst. County Atty. (Charles W. Thompson, County Atty.; Bruce P. Sherman, Sr. Asst. County Atty., on brief), Rockville, for Appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

BELL, Judge.

This appeal by Robert F. McCullagh ("Officer McCullagh") and the Montgomery County Lodge No. 35, Fraternal Order of Police, Officer McCullagh's recognized labor organization, collectively the appellants, challenges the power of the Chief of Police of Montgomery County[1], the appellee, to prohibit, under the applicable regulations, Officer McCullagh's engaging in secondary employment, even as punishment for a violation of those regulations. Concluding that the Chief of Police has that power, the Circuit Court for Montgomery County entered judgment affirming the appellee's decision prohibiting Officer McCullagh from engaging in such employment for a period of three months. We granted the writ of certiorari on our own motion to review that judgment.

## I.

Officer McCullagh presently is, and at all times pertinent to this appeal was, a police officer with the Montgomery County Police Department. From February 1992 through June 1993, he was also employed as a security officer at the Northwest Apartment Complex. During this time period, a Police De-

---

**1.** At all times relevant to this appeal, the Chief of Police was Clarence Edwards. By line filed in the Court of Special Appeals on July 11, 1995, Carol A. Mehrling, the present Chief, was substituted as the appellee in this case. Unless otherwise indicated, all references to the appellee or the Chief will be to the former Chief, Clarence Edwards.

partment rule[2] prohibited its employees from engaging in employment outside the Department without written permission of the Chief of Police and the approval of the County Ethics Commission. In addition, § 5.0 of Ethics Commission regulations, "Employment Outside of the County Service,"[3] which, by the adoption of Resolution No. 10–1274, were approved by the Montgomery County Council, prescribed the procedure for obtaining approval to engage in secondary employment. Officer McCullagh did not obtain authorization of the Chief of Police and the County Ethics Commission before engaging in "secondary employment", however. Consequently when this fact became known, the Department initiated proceedings against him in accordance with the Law Enforcement Officers Bill of Rights ("LEOBR"), Maryland

2. In effect at that time was Function Code 355, § III. Effective August 15, 1991, it provided:

> Employees of the Department of Police shall not engage in any employment outside the department without the written permission of the Chief of Police and approval from the County Ethics Commission.

Officer McCullagh was not charged pursuant to that rule, however. Instead, he was charged pursuant to Function Code 300, § III, Rule 13.A, presumably the predecessor of Function Code 355, § III, which provided:

> No employee of the Department of Police will engage in any other employment without the prior written approval of the Chief of Police and the County Ethics Commission.

There does not appear to be any substantive difference between these provisions.

3. Sections 4.7 and 4.8 specifically apply to county police employees or those with police powers. They provide:

> 4.7 Sworn police officers and civilian police employees may not hold outside employment involving security duties in the district to which they are assigned as county employees, *except as permitted by special waiver granted by the Ethics Commission on a case by case basis.* Central office staff will be considered on a case by case basis by the Ethics Commission.
>
> 4.8 County employees with police powers may not engage in any outside employment position which requires a Maryland State Investigator's License; this requirement shall not be applicable to ownership/conduct of a business which engages in security related work only.

(Emphasis added).

Code (1957, 1992 Repl.Vol., 1995 Cum.Supp.) Article 27, §§ 727 to 734D.

Following an investigation, charges [4] were brought against Officer McCullagh and a hearing board, *see* LEOBR § 727(d)(1) [5], was convened, *see* LEOBR § 730(a) and (d) [6], to

---

**4.** In addition to the secondary employment charge, the Department alleged that Officer McCullagh violated Function Code 355, § VI, Restrictions H, 1 and 2:
> Employees in the performance of their Secondary Employment will not:
> 1. utilize any county equipment other than wearing the handgun and/or a portable radio (as a safety measure), and driving a PPV to the job site.
> 2. take advantage of any services provided by the department unless in the performance of legitimate police action.

This charge was dismissed on motion of Officer McCullagh's counsel.

**5.** Maryland Code (1957, 1992 Repl.Vol., 1995 Cum.Supp.) Article 27, § 727(d) provides:
> (d) "Hearing board" means:
> (1) A board which is authorized by the chief to hold a hearing on a complaint against a law enforcement officer and which consists of not less than three members, except as provided in paragraphs (2) and (3) of this subsection, all to be appointed by the chief and selected from law enforcement officers within that agency, or law enforcement officers of another agency with the approval of the chief of the other agency, and who have had no part in the investigation or interrogation of the law enforcement officer. At least one member of the hearing board shall be of the same rank as the law enforcement officer against whom the complaint has been filed.

**6.** Those sections provide:
> (a) *Notice; record.*—If the investigation or interrogation of a law enforcement officer results in the recommendation of some action, such as demotion, dismissal, transfer, loss of pay, reassignment, or similar action which would be considered a punitive measure, then, except as provided under subsection (c) of this section and except in the case of summary punishment or emergency suspension as allowed by § 734A of this subtitle and before taking that action, the law enforcement agency shall give notice to the law enforcement officer that he is entitled to a hearing on the issues by a hearing board. The notice shall state the time and place of the hearing and the issues involved. An official record, including testimony and exhibits, shall be kept of the hearing.
>
> \* \* \* \* \* \*
>
> (d) *Conduct of hearing.*—The hearing shall be conducted by a hearing board. Both the law enforcement agency and the law enforcement officer shall be given ample opportunity to present evidence and

conduct a hearing on those charges. After the hearing, at which it unanimously found that Officer McCullagh was guilty of violating the departmental rule pertaining to secondary employment and, in compliance with LEOBR § 731,[7] the hearing board issued a decision stating its findings of fact. It also recommended that the Chief of Police issue a letter of reprimand to Officer McCullagh, to be placed in his personnel file, and suspend him from engaging in secondary employment for three months. Pursuant to § 731(c)[8], the Chief sustained the board's findings and adopted the disciplinary sanctions it recommended.

---

argument with respect to the issues involved. Both may be represented by counsel.

7. Section 731 provides in pertinent part:

(a) Any decision, order, or action taken as a result of the hearing shall be in writing and shall be accompanied by findings of fact. The findings shall consist of a concise statement upon each issue in the case. A finding of not guilty terminates the action. If a finding of guilt is made, the hearing board shall reconvene the hearing, receive evidence, and consider the law enforcement officer's past job performance and other relevant information as factors before making its recommendations to the chief. A copy of the decision or order and accompanying findings and conclusions, along with written recommendations for action, shall be delivered or mailed promptly to the law enforcement officer or to his attorney or representative of record and to the chief. The person who may take any disciplinary action following any hearing in which there is a finding of guilt shall consider the law enforcement officer's past job performance as a factor before he imposes any penalty.

(b) After the disciplinary hearing and a finding of guilt, the hearing board may recommend punishment as it deems appropriate under the circumstances, including but not limited to demotion, dismissal, transfer, loss of pay, reassignment, or other similar action which would be considered a punitive measure.

8. That section provides:

(c) The written recommendations as to punishment are not binding upon the chief. Within 30 days of receipt of the hearing board's recommendations, the chief shall review the findings, conclusions, and recommendations of the hearing board and then he shall issue his final order. The chief's final order and decision is binding and may be appealed in accordance with this subtitle. Before the chief may increase the recommended penalty of the hearing board, he personally shall review the entire record of the hearing board proceedings, shall permit the law enforcement officer to be heard and shall state the reason for increasing the recommended penalty.

The appellants did not then, and do not now, contest the validity of the letter of reprimand as a disciplinary sanction. Their only complaint then, as now, is the suspension from working secondary employment. Thus, in response to the Chief's decision, the appellants, through counsel, wrote the Chief requesting only that he reconsider and rescind the suspension of Officer McCullagh from secondary employment. They maintained that, in light of the express terms of § 729A,[9] "[t]he total prohibition of secondary employment for a three month period is not a 'punitive' measure sanctioned by the LEOBR." That request was denied.

Subsequently, pursuant to LEOBR § 732,[10] the appellants appealed to the circuit court. In that court, the appellants continued to challenge the prohibition of secondary employment on the same ground, that it was an unauthorized disciplinary sanction, although they expanded and refined their arguments. They argued, specifically, that, because the Police Department failed to promulgate regulations under which secondary employment is prohibited for enumerated reasons, the total prohibition of secondary employment is not a sanction contemplated or authorized by the LEOBR. Consequently, they continued, when such a sanction is imposed by the Chief, it constitutes an unauthorized prohibition of secondary employment, in contravention of § 729A.

The circuit court rejected this argument. Reasoning that § 729A simply is a general prohibition against law enforcement agencies forbidding law enforcement officers from engaging in secondary employment that is inoperative when, for example, the prohibition is imposed as punishment against an

---

**9.** LEOBR § 729A provides:

> A law enforcement agency may not prohibit secondary employment but may promulgate reasonable regulations as to a law enforcement officer's secondary employment.

**10.** Section 732 provides:

> Appeal from decisions rendered in accordance with § 731 shall be taken to the circuit court for the county pursuant to Maryland Rule B2. Any party aggrieved by a decision of a court under this subtitle may appeal to the Court of Special Appeals.

employee who has violated secondary employment directives, it concluded that the appellant's reliance on LEOBR § 729A is misplaced, "as Section 729A deals with procedure, not with substantive disciplinary action." The court emphasized that the LEOBR provides the exclusive remedy for police officers in departmental disciplinary matters. It pointed out, in that regard, that LEOBR § 731(b) authorizes the hearing board to "recommend punishment as it deems appropriate under the circumstances, including but not limited to demotion, dismissal, transfer, loss of pay, reassignment, or other similar action which would be considered a punitive measure" and subsection (c) requires the Chief to "review the findings, conclusions and recommendations of the hearing board and then . . . issue his final order." The court concluded that the disputed suspension of Officer McCullagh from engaging in secondary employment for three months falls within the scope of the Chief's authority to impose disciplinary sanctions, as defined by § 731, and that the Chief properly exercised that authority.

The appellants next appealed to the Court of Special Appeals. Before that court could consider the matter, this Court issued the writ of certiorari, on its own motion, to determine the meaning of § 729A and its effect on the power of a law enforcement agency to punish law enforcement officers who violate applicable secondary employment regulations.

## II.

The Montgomery County procedure for the adoption and compilation of regulations and for their public notification, as well as the history of the County's regulation of secondary employment provide an appropriate context for consideration of the various arguments proffered by the parties to this appeal.

## A.

How regulations are adopted and compiled and the public provided with notice is the subject of Article II of the Mont. Cty.Code (1994), a part of the County's Administrative Procedures Act. "It is the purpose of [that Article is] to prescribe a

single and consistent procedure for the adoption, review and repeal of regulations, and to provide a uniform procedure for their public notification and compilation." § 2A–12(a). A regulation is defined as "any rule or standard that an issuer [11] by law is authorized to issue," including "any amendment to an existing regulation." § 2A–13(h). To be effective, it "must be adopted under one of the 3 methods" set out in § 2A–15(f) [12], in addition to meeting the other requirements imposed by

---

**11.** Section 2A–13(f) defines "issuer" as:

(1) The County Executive; or
(2) A person or agency authorized by law to issue regulations.
Section 2A–14 clarifies when a person or agency is authorized to issue regulations. It provides:
If a law authorizes a person or agency to implement or enforce that law, the person or agency may adopt a regulation to implement or enforce that law even if the authority to adopt the regulation is not expressly stated in that law.

**12.** That section provides:

(f) *Procedures for approval*
(1) Each regulation must be adopted under one of the 3 methods in this subsection. To amend or repeal an adopted regulation, an issuer must use the procedure under which the regulation was adopted.
(2) A law authorizing a regulation may specify that one of the 3 methods must be used.
(3) If the law does not specify that one of the 3 methods be used. method (2) must be used.
Method (1)
(A) A regulation proposed under this method is not adopted until the County Council approves it.
(B) The issuer must send a copy of the proposed regulation to the Council after the deadline for comments published in the Register.
(C) The Council by resolution may approve or disapprove the proposed regulation.
(D) If the Council approves the regulation, the regulation takes effect upon adoption of the resolution approving it or on a later date specified in the regulation.
Method (2)
(A) The issuer must send a copy of the proposed regulation to the County Council after the deadline for comments published in the Register.
(B) The Council by resolution may approve or disapprove the proposed regulation within 60 days after receiving it.
(C) If necessary to assure complete review, the Council by resolution may extend the deadline set under subparagraph (B).

Article II and by law, § 2A–15(a), *i.e*, contain no more than one subject, § 2A–15(b), and, pursuant to § 2A–15(c), the issuer shall have published in the Montgomery County Register, *see* § 2A–13(g) and § 2A–19, the following:

(1) A summary of the proposed regulation;

(2) The place where a copy of the proposed regulation may be obtained;

(3) The date, time, and place of any public hearing;

(4) The name and address of a person to whom comments may be directed;

(5) The deadline for submitting comments;

(6) A citation of the Section of the County Code that authorizes the adoption of the regulation; and

(7) A reference to the procedural method used to adopt the regulation.

Finally, the issuer must publish the final action taken on the regulation, summarizing any substantive changes made during the process, within 45 days of that action. § 12–15(i).

Temporary regulations are also contemplated. § 2A–15(j).[13] When an issuer determines that "[a] public or fiscal emergency requires its adoption" or that "[t]he public interest will be

_____

(D) If the Council approves the regulation, the regulation takes effect upon adoption of the resolution approving it or on a later date specified in the regulation.

(E) If the Council does not approve or disapprove the proposed regulation within 60 days after receiving it, or by any later date set by resolution, the regulation is automatically approved.

(F) If a regulation is automatically approved under this method, the regulation takes effect the day after the deadline for approval or on a later date specified in the regulation.
Method (3)

(A) A regulation adopted under this method is not subject to County Council approval or disapproval.

(B) The issuer must send a copy of the adopted regulation to the Council after the deadline for comments published in the Register.

(C) The regulation takes effect when the Council receives it or on a later date specified in the regulation.

**13.** The prior version of this section referred to the regulations it authorized as "emergency" regulations. Current § 2A–15(j) provides:

(j) Temporary regulations.

materially harmed if the regulation does not take effect immediately," § 2A–15(j)(1), a regulation temporary in duration—no more than 90 days—subject, upon request, and for a compelling reason, to being extended for an additional 90 days by the County Council, § 2A–15(j)(3)(B) and (4), may be adopted and issued. § 2A–15(j)(2). If notice of its adoption is published in the next available issue of the Register, the regulation need not meet the requirements of § 2A–15(c) and (f). It is effective when the County Council receives a copy from the issuer, along with "an explanation why its immediate adoption without public comment or Council review is necessary." § 2A–15(j)(3)(A).

---

(1) An issuer may adopt a temporary regulation under this subsection if:

(A) A public or fiscal emergency requires its adoption; or

(B) The public interest will be materially harmed if the regulation does not take effect immediately.

(2) A temporary regulation does not have to meet the publication and approval requirements of subsections (c) and (f), but the issuer must publish notice of the regulation's adoption in the next available issue of the Register.

(3) A temporary regulation is effective:

(A)(i) When the County Council receives from the issuer a copy of the temporary regulation and an explanation why its immediate adoption without public comment or Council review is necessary; or

(ii) On a later date specified in the regulation and justified in the explanation; and

(B) For not more than 90 days, as specified in the regulation. During this time, an adopted permanent regulation may immediately supersede a temporary regulation.

(4)(A) The issuer may ask the Council once to extend the effective period of a temporary regulation for up to 90 more days.

(B) The issuer must provide a compelling reason for an extension.

(C) The Council must not extend a temporary regulation more than once.

(5)(A) The Council by resolution may revoke a temporary regulation, effective when the resolution is adopted.

(B) If the Council revokes a temporary regulation, the resolution must explain the reason.

(6) If the Council revokes or does not extend a temporary regulation, the issuer or any other person authorized to issue regulations must not adopt a substantially similar temporary regulation within one year after the Council's action. However, within that year an issuer may propose a substantially similar temporary regulation to the Council, and the resolution will take effect only if the Council approves it by resolution.

Section 2A–18 addresses the compilation of the regulations. It provides that, among other matters, "[e]ach regulation issued by the Executive or any person or agency that issues regulations under this Article" be included in a Code of Montgomery County Regulations ("COMCOR"), *see* § 2A–13(d), which the Chief Administrative Officer of the County is required to publish. § 2A–18(a). Moreover, each regulation adopted during the year, along with a revised COMCOR index, must be published in a supplement to COMCOR at least once a year. § 2A–18(c).

Three county agencies or officials authorized to issue regulations are relevant to the inquiry *sub judice:* the County Executive; the Police Department; and the Ethics Commission. Pursuant to § 33–7(b), the County Executive is charged with adopting "personnel regulations under method (1) of section 2A–15. . . ." The Police Department is the subject of Chapter 35 of the Mont.Co.Code. Section 35–3 prescribes the powers and duties of the Chief. Authority for the adoption of regulations pertinent to the proper functioning of the Police Department is set forth in § 35–3(c). It provides:

(c) *Adoption of regulations, orders, etc., generally.* The director of police shall adopt, under method (2) of section 2A–15 of this Code, all regulations for the county which pertain to the work of the department of police. The director shall issue such additional instructions and adopt such orders and administrative procedures, not inconsistent with law, as deemed proper in the exercise of the functions of chief executive officer of the department of police.

Subsection (a) makes clear that the chief executive officer of the Police Department is an employee of the County, being "subject to such orders, rules and regulations as may be issued by the county executive from time to time," as well as for "the proper and efficient conduct, control and discipline of the department of police." [14]

---

14. Section 35–3(a) provides:

Finally, the Ethics Commission's power to issue regulations pertinent to this case is derived from § 19A–5(j) of the Code. Under that section, the Commission is required to act in accordance with method (2) of § 2A–15.

### B.

By 1983 L.M.C., ch. 1 § 1,[15] Montgomery County enacted legislation, presently codified at Mont.Cty.Code § 19A–12,[16]

> (a) *Chief Executive Officer.* The director of police is the chief executive officer of the department of police and in the exercise of official duties the director shall be subject to such orders, rules and regulations as may be issued by the county executive from time to time and shall be responsible to the county executive for the proper and efficient conduct, control and discipline of the department of police.

**15.** Originally codified as § 19A–8, Mont.Cty.Code (1972, 1977 Repl. Vol., 1982 Cum.Supp.), as relevant, it provided:

> (a) *Generally.* No public employee or official may engage in outside employment unless approved by the ethics commission as not violating the provisions of the charter or this chapter. The ethics commission may approve outside employment by granting a waiver authorized by this chapter, and such approval shall be subject to the conditions of the waiver. The ethics commission may establish appropriate procedures regulating outside employment activities. Notice of the provision of this section shall be given to current public employees by the chief administrative officer, to prospective applicants for affected positions by the appointing authority, and to candidates for affected elected offices by the supervisor of elections.
> (b) *Specific restrictions.* Except as permitted by the ethics commission, an employee may not:
> (1) Be employed by, or have a financial interest in, any entity subject to the authority of or contracting (including negotiations) with the government agency with which the employee is affiliated; or
> (2) Hold any other employment relationship which would impair the impartiality and the independence of judgment of the official or employee.

**16.** Section 19A–12 of the Mont.Cty Code provides, in pertinent part:

> (a) *General Restrictions.*
> (1) A public employee must not engage in any other employment unless the employment is approved by the Commission. The Commission may impose conditions on its approval of other employment.
> (2) The Commission may adopt appropriate procedures to receive and decide other employment requests.

restricting "other" [17] employment by county employees. The ordinance prohibited public employees from "engag[ing] in any other employment unless the employment is approved by [the Montgomery County Ethics] Commission," which was also authorized to "impose conditions on its approval of other employment." § 19A–12(a)(1). It provided, in addition, that "[t]he Commission may adopt appropriate procedures to receive and decide other employment requests," thus, enabling it to establish procedures in accordance with which county employees would be permitted to engage in secondary employment. § 19A–12(a)(2).

In 1985, pursuant to the grant of authority given it by § 19A–12(a)(2), the Ethics Commission promulgated regulations embodying the administrative policies and procedures governing the approval of the employment of County employees outside of government service. These regulations were approved by the Montgomery County Council, in accordance with the requirements of method (2) of Code § 2A–15, when it adopted Resolution No. 10–1274.[18] Under § 5.0.1 of the regulations, county employees who wish to engage in secondary employment are required to submit a written form request to the administrative head of the affected county department, for forwarding, with recommendation, to the Ethics Commission and the Office of Personnel. The Ethics Commission is

---

It also prescribes certain "specific restrictions." Section 19A–12(b) provides:

Unless the Commission grants a waiver under subsection 19A–8(b), a public employee must not:

(1) be employed by any business that:

(A) is regulated by the County agency with which the public employee is affiliated; or

(B) negotiates or contracts with the County agency with which the public employee is affiliated; or

(2) hold any employment relationship that would impair the impartiality and independence of judgment of the public employee.

17. Although § 19A–12 refers to "other employment," rather than secondary employment, there does not appear to be any substantive difference between the two terms.

18. At that time, method (2) required Council approval or disapproval within 30 days, rather than the 60 days presently required.

charged with reviewing the request and making the final decision. § 5.0.4. It is then required to communicate its decision, in writing, to the employee, the department head and the Office of Personnel. *Id.*

The regulations also address the situation in which county employees engage in secondary employment in violation of their requirements. Section 5.1 provides:

> County employees may begin outside employment at their own risk as soon as such employment is approved by the department/agency head with the understanding that continuance of the outside employment is contingent upon final approval by the Ethics Commission. County employees engaged in outside employment without the approval of the department must immediately submit requests in accordance with Ethics Commission procedures. *Failure to obtain Ethics Commission approval is a violation of Section 14.2 of the County Regulations and may result in disciplinary action and other penalties as provided by law.*

(Emphasis supplied).

## C.

Secondary employment by a police officer is addressed, as we have seen, by Function Code 355, issued by the Montgomery County Police Department in 1991.[19] Defining secondary employment as "any employment not required by the Mont-

---

**19.** Although it references (*albeit* not by specific Code reference) both § 19A–12 of the Montgomery County Code and the regulations the Ethics Commission adopted pursuant thereto, Function Code 355 does not directly mirror either. While recognizing the ultimate responsibility of the Ethics Commission to approve or deny secondary employment requests, *see* § V.D., it gives the Chief, *id.,* and, in some instances, district or unit commanders, *see* § V.C., authority to give initial approval. While the county ordinance and the regulations adopted pursuant to it contain broad categories of restrictions, Function Code 355 contains more specific ones, eight in all. Moreover, there is a critical substantive difference between the Function Code and the regulations, the former expressly giving the Chief the power to prohibit secondary employment, while the latter expressly does not, confining the Chief's authority to imposing sanctions "as provided by law." *See* discussion *infra.*

gomery County Department of Police," § II.B., it states the Department's policy with respect to such employment, as follows:

All employees of the department will comply with requirements of Chapter 19A of the Montgomery County Code. These sections establish that all requests (for Waivers) for Merit System employees to engage in outside employment must be in writing and shall be filed with the Chief of Police. The Ethics Commission has the authority to reject, modify, or approve the request in accordance with standards established by the commission. Therefore, all employees who want to work secondary jobs will comply with the procedures established in this directive.

§ I. Section III. clearly states the rule applicable to secondary employment, "[e]mployees of the Department of Police shall not engage in any employment outside the department without the written permission of the Chief of Police and approval from the County Ethics Commission," while § V.B. sets out the consequence of failing to comply: "[e]mployees who engage in secondary employment without approval are subject to disciplinary action." The policy does not address directly what that action will be; however, § VIII.B. purports to give the Chief authority to cancel secondary employment or the permission to engage in such employment. It provides:

The Chief of Police has the authority to cancel, temporarily or permanently, permission of any employee engaged in secondary employment. The employee concerned will be notified, by memorandum, of the reasons for any termination.

Police Department regulations are contained in Division 08 of COMCOR. Perusal of that Division reveals that Function Code 355 is not included. Neither does the appellee argue that the Police Department adopted it pursuant to Method (3), which does not require Council approval, under method (2), as § 35-3 requires, or as a temporary regulation as permitted by § 2A-15(j).

## D.

Section 33–7(b) of the Montgomery County Code requires "[t]he County Executive [to] adopt personnel regulations under method (1) of section 2A–15 of the Code." Pursuant to that authority, the County Executive has promulgated Montgomery County Personnel Regulations. *See* Montgomery County Code, Article 33, Appendix F.[20] Originally adopted by the County Personnel Board and approved by the County Council in 1949, *see* Resolution No. 527, they were extensively amended in 1980 and 1986, which amendments were approved by the County Council when it adopted, in the manner required, Resolutions Nos. 9–1072 and 10–2060, respectively. Among them, Regulation § 27 addresses "Disciplinary actions." Section 27–2 delineates the "causes for disciplinary action," which include "(h) [v]iolation of an established policy or procedure" and "(*o*) [v]iolation of any provision of the county charter, county laws, ordinances, *regulations*, state or federal laws, or conviction for a criminal offense, if such violation is related to county employment." (Emphasis added). The types of disciplinary action a county agency head is permitted to impose, *see* § 27–5, are treated in § 27–3. It provides, in pertinent part:

27–3. *Types of disciplinary actions*

(a) *Oral Admonishment....*

(b) *Written Reprimand....*

(c) *Within–Grade Reduction....*

(d) *Suspension.* The placing of an employee in leave without pay status for a specified period, not to exceed five (5) work days, for a specific act, infraction or violation of a policy or procedure. The chief administrative Officer may approve a suspension for more than five (5) days, but

---

**20.** These regulations, including amendments to them adopted subsequent to 1984, when Article II of the *Administrative Procedures act* was adopted, *see* 1984 L.M.C., ch. 24, § 1, are not compiled in COMCOR, notwithstanding § 2A–18. We have found no explanation for the omission. Neither party has raised this as an issue. Consequently, we do not address its effect, if any; we simply note the omission.

under no circumstances may a suspension exceed one (1) calendar month.

(e) *Suspension Pending Investigation of Charges or Trial.* . . . .

(f) *Demotion.* . . . .

(g) *Dismissal.* . . . .

Nowhere in this compilation is the prohibition, or the suspension, of the right to engage in secondary employment mentioned.

## III.

Noting that § 729A authorizes law enforcement agencies to promulgate reasonable regulations as to secondary employment, the appellants argue that, unless those regulations specifically prescribe them, penalties that prohibit such employment, *e.g.*, suspension of the right of those who violate those regulations to engage in that employment, are violative of its mandate. They further argue that, never having been promulgated and adopted as required by Montgomery Cty. Code § 2A–15, Function Code 355 is not a promulgated reasonable regulation as contemplated by § 729A.[21] They maintain, therefore, that, whatever the reason or the period of time, the Chief exceeded his authority when he prohibited Officer McCullagh from engaging in secondary employment.

---

21. Section 729A requires action by the law enforcement agency in the form of promulgating regulations. Clearly recognizing that regulations covering the same subject had already been adopted by the Ethics Commission, another County Agency, the Chief issued Function Code 355 apparently not as a regulation—it was not issued with the required formality or Council approval—but, as Code § 35–3(c) permits, as a departmental rule, *i.e.*, an order or administrative procedure, largely to approve, if not adopt, those regulations. Ordinarily, this would raise the question of the effect of the Ethics Commission Regulations. We need not, and do not, decide that issue. We have previously indicated that, notwithstanding their contention that the Police Department has never properly issued regulations, reasonable or otherwise, with respect to secondary employment, the appellants do not challenge the validity of the reprimand sanction, presumably because the Ethics Commission regulations were properly adopted and the fact that "reprimand" is one of the disciplinary actions prescribed in § 27–3 of the Personnel Regulations.

The appellants further assert that the Chief derives his substantive authority to discipline officers under his command from the Montgomery County Personnel Regulations § 27 and, in particular, § 27–3. Since § 27–3 does not authorize the Chief either to prohibit or to suspend secondary employment and no other regulations have been promulgated authorizing him to do so, his imposition of such sanction was unauthorized.

The appellee contends that § 729A does not require Police Department regulations governing secondary employment specifically to delineate prohibition or suspension of that right as a disciplinary sanction prior to its actually being imposed for violation of the secondary employment regulations. In the alternative, she asserts that the Police Department has promulgated reasonable regulations as to secondary employment, *via* the Ethics Commission regulations, approved by County Council Resolution No. 10–1274, and Function Code 355.

The Chief's authority to discipline law enforcement officers is not derived, the appellee submits, from the Montgomery County Personnel Regulations. Rather, she asserts, § 731 authorizes the Chief to impose any punitive measure which he or she deems "appropriate." The appellee thus maintains that the source of the Chief's substantive authority to discipline law enforcement officers is LEOBR § 731, not the Montgomery County Personnel Regulation § 27–3. Moreover, the appellee argues that § 731 preempts § 27–3 to the extent that they conflict as to the scope of the Chief's substantive authority in the disciplinary context.

## IV.

The interpretation of § 729A forms the crux of the dispute at bar. Our task is to determine the effect of § 729A on a Chief's power to discipline law enforcement officers. May he or she, in the absence of a regulation specifically so providing, suspend, or otherwise prohibit, a law enforcement officer from engaging in secondary employment? In making this determination, as with any statutory construction issue,

we must discern and effectuate the intent of the Legislature. *Baltimore v. Cassidy*, 338 Md. 88, 93, 656 A.2d 757, 760 (1995); *Jones v. State*, 336 Md. 255, 260, 647 A.2d 1204, 1206 (1994). To this end, we first look to the language of the statute, *Oaks v. Connors*, 339 Md. 24, 35, 660 A.2d 423, 429 (1995), with which the search for legislative intent begins, and ordinarily ends. *In re Douglas P.*, 333 Md. 387, 392, 635 A.2d 427, 429 (1994). "Where a statute is plainly susceptible of more than one meaning and thus contains an ambiguity, courts consider not only the literal or usual meaning of the words, but their meaning and effect in light of the setting, the objectives and purpose of that enactment." *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 75, 517 A.2d 730, 732 (1986). *See also Schuman v. Aluisi*, 341 Md. 115, 119, 668 A.2d 929, 931–32 (1995); *Kaczorowski v. City of Baltimore*, 309 Md. 505, 514–16, 525 A.2d 628, 632–33 (1987). "Moreover, the language of the statute must be interpreted in context, (citations omitted), avoiding an interpretation that is illogical or incompatible with common sense." *Haupt v. State*, 340 Md. 462, 471, 667 A.2d 179, 183 (1995)(citing *D & Y, Inc. v. Winston*, 320 Md. 534, 538, 578 A.2d 1177, 1179 (1990); *Blandon v. State*, 304 Md. 316, 319, 498 A.2d 1195, 1196 (1985); *Erwin & Shafer, Inc. v. Pabst Brewing Co.*, 304 Md. 302, 315, 498 A.2d 1188, 1194 (1985)).

Section 729A is unambiguous; its language could not be clearer: it denies law enforcement agencies the power to prohibit law enforcement officers from engaging in secondary employment and, at the same time, permits those agencies to regulate that employment by promulgating reasonable rules for that purpose. The legislative history of the section confirms its meaning.

Section 729A was enacted by the General Assembly in 1984. See ch. 452, Laws of 1984. Introduced as House Bill 915, as originally drafted, it provided for the promulgation of regulations as to secondary employment, "as necessary to prohibit a conflict of interest in the performance of the officer's official duties." Committee Report System Bill Analysis, Senate Judicial Proceedings Committee, House Bill 915, p.1 (1984).

This language was stricken at the urgings of the Maryland Lodge, Inc. of the Fraternal Order of Police and replaced with the present language. The letter from the Fraternal Order to Delegate Owens, then Chairman of the House Judiciary Committee, urging the amendment read, in part:

> It is our position that there should be a right at law to secondary employment, however, that right should be subject to reasonable regulation by the law enforcement agency employing the police officer. *We wish to give the agency as much latitude as possible in regulating that employment, believing the word "reasonable" to be sufficient for our purposes.* We would strongly urge you to adopt the amendments proposed by the Chiefs and continue the concept of reasonable regulations to the police employer through our bill.

(Emphasis supplied). The purpose of § 729A was stated in the Summary of Committee Report by the Senate Judicial Proceedings Committee:

> The intent of House Bill 915 is to provide that a law enforcement agency may not prohibit secondary employment but may regulate the secondary employment of a law enforcement officer.

> The purpose of the bill is to allow each local agency to regulate secondary employment in accordance with local circumstances and local interests.

Summary of Committee Report, Senate Judicial Proceedings Committee, p.1 (1984).

The trial court concluded that § 729A deals with "procedure, not with substantive disciplinary action" and thus has no effect on the Chief's authority to impose disciplinary sanctions. The plain language of § 729A belies that conclusion. By its express terms, that section limits the Chief's power to prohibit secondary employment, for any period of time or for any reason, absent regulations permitting such action. To construe § 729A simply as a general prohibition, in regards to secondary employment, which has no effect on the Chief's disciplinary authority is to read into § 729A an exception

which neither exists, nor is supported by the stated legislative purpose. "Courts may not[,] 'under the guise of construction ... insert exceptions not made by the legislature.'" *Dodds v. Shamer,* 339 Md. 540, 554, 663 A.2d 1318, 1325 (1995)(quoting *Amalgamated Casualty Ins. Co. v. Helms,* 239 Md. 529, 535–36, 212 A.2d 311, 316 (1965)).

■ Clearly, the General Assembly intended that law enforcement officers have the right to engage in secondary employment, subject, however, to its reasonable regulation by the law enforcement agency. Consequently, it is equally as clear that, by enacting § 729A, it meant to limit the agency's ability to prohibit secondary employment except to the extent necessary for its reasonable regulation. Thus, unless the agency chooses to regulate secondary employment and promulgates regulations for that purpose, including one that authorizes the Chief to suspend or prohibit secondary employment as a disciplinary tool, a law enforcement officer, even one who has failed to obtain the required approval, may not be barred from engaging in secondary employment. Absent regulations permitting it, in other words, a prohibition of secondary employment for any reason contravenes § 729A.

In *Baltimore City Police Department v. Andrew,* 318 Md. 3, 566 A.2d 755 (1989), this Court addressed the effect to be given to a section of the LEOBR which, like § 729A, limits the agency's power. LEOBR § 728(b)(4), which lay at the heart of *Andrew,* provides:

A complaint against a law enforcement officer, alleging brutality in the execution of his duties, may not be investigated unless the complaint be duly sworn to by the aggrieved person, a member of the aggrieved person's immediate family, or by any person with firsthand knowledge obtained as a result of the presence at and observation of the alleged incident, or by the parent or guardian in the case of a minor child.... *An investigation which could lead to disciplinary action under this subtitle for brutality may not be initiated and an action may not be taken unless*

*the complaint is filed within 90 days of the alleged brutality.*

(Emphasis supplied). Captain Andrew was charged with police brutality; however, the victim did not file the complaint within 90 days of the alleged incident, as required. Therefore, he sought to enjoin the Baltimore City Police Department from prosecuting or otherwise taking disciplinary action against him. The circuit court issued the injunction.

On appeal, the Police Department argued that § 728 was not applicable because two sets of local provisions authorized it to initiate the disputed action. This Court disagreed, reasoning:

> If § 728(b)(4) absolutely bars any investigation of a brutality complaint that might lead to disciplinary action against an officer, provided the sworn complaint is filed more than 90 days after the alleged incident, then no regulation of a police commissioner or police chief can change that outcome. . . .

*Id.* 318 Md. at 13, 566 A.2d at 760. Thus, this Court enforced the limitation placed on the initiation of the brutality complaint.

When the agency's regulations do not authorize it, § 729A, in the same way that § 728(b)(4) was a limitation on the initiation of an investigation, is a limitation on the agency's authority to prohibit secondary employment. It too must be given full effect.

■ Moreover, in lieu of permitting the prohibition of secondary employment, § 729A permits law enforcement agencies to control it by "promulgat[ing] reasonable regulations" for that purpose. Thus, that is a prerequisite to regulating secondary employment. Where a statute establishes a condition precedent for action authorized to be taken by an agency, the agency action may not validly be taken until that condition has been met. *Pyle v. Brooks,* 31 Or.App. 479, 570 P.2d 990 (1977). *See Schinzel v. Department of Corrections,* 124 Mich. App. 217, 333 N.W.2d 519 (1983). *See also Mayor and City*

*Council of Ocean City v. Johnson,* 57 Md.App. 502, 470 A.2d 1308 (1984).

In *Pyle,* the court construed a statute which provided, in relevant part:

> *Pursuant to rules and regulations promulgated by the Mental Health Division,* the superintendent of any state hospital for the treatment and care of the mentally ill may admit and hospitalize therein as a patient, any person who may be suffering from nervous disorder or mental illness, and who voluntarily has made written application for such admission.

570 P.2d at 992. Agreeing with the appellant, it held:

> [The statute] authorizes voluntary commitment . . . only "pursuant to rules and regulations by the Mental Health Division." No such rules have been promulgated.
>
> Where the legislature authorizes an agency to take action . . . and establishes certain prerequisites for such action, we may infer that the requirement that the agency act pursuant to rule is more than a formality. Rather, rules are a prerequisite to such action . . . The statutory requirement that the Mental Health Division act pursuant to rules will be given effect. Action taken purportedly under the statute was therefore unauthorized by it and is voidable upon challenge.

*Id.* 570 P.2d at 992–93 (footnote omitted).

The court, in *Schinzel,* held that, under that State's Administrative Procedures Act, an inmates' receipt of postage stamps sent through the mail could only be prohibited by rule. That Act defined "rule" to mean

> an agency regulation,statement, standard, policy, ruling or instruction of general applicability, which implements or applies law enforced or administered by the agency, or which prescribes the organization, procedure or practice of the agency, including the amendment, suspension or rescission thereof, but does not include the following:

* * * * * *

(g) An intergovernmental, interagency or intra-agency memorandum, directive or communication which does not affect the rights of, or procedures and practices available to the public.

333 N.W.2d at 520. The court rejected the department's contention that the policy directive was enforceable as an intra-agency memorandum, stating,

a policy directive may not be considered an intra-agency memorandum ... when it affects the rights and practices available to the public; it must be promulgated as a rule under the proper procedures set out by the APA.

*Id.*

The result and rationale employed in *Johnson* is consistent. In that case, the Court of Special Appeals held that charges based on regulations which had not been approved by the Ocean City Mayor and City Council, as required by a provision of the Ocean City Code were invalid. In construing that code provision, the court noted that the subject matter of the regulations "ha[s] an obvious and significant impact upon the public at large and thus upon the public's perception of the City government." 57 Md.App. at 514, 470 A.2d at 1314. It concluded that the code provision had to be interpreted in that light, reasoning:

The Mayor and City Council who, under the City Charter, are ultimately responsible to the people for the operation of the police department, had good reason to insist that regulations of this type not be put in effect by the Chief of Police alone, without their prior approval. Section 15-1 was the expression of that limitation.

*Id.*

The Ethics Commission regulations were properly adopted by the Commission and approved by the County Council in accordance with § 2A-15. Those regulations, however, do not purport to authorize the Chief to prohibit or suspend an officer's engaging in secondary employment as a sanction for their violation. They simply provide that violation "may result in disciplinary action and other penalties as provided by law."

And the County Personnel Regulations contain no such authorization; while permitting suspension, they refer to the officer's primary employment and then for a maximum period of 30 days.

Function Code 355, on the other hand, expressly authorizes the Chief "to cancel, temporarily or permanently, permission of any employee engaged in secondary employment." § VIII.(B). But it was neither properly adopted nor approved as required by § 2A–15. Consequently, in light of § 729A, the authority it gives the Chief is, itself, unauthorized. There simply is no basis for the suspension of Officer McCullagh's right to engage in secondary employment.

## V.

The appellee's argument that, § 729A notwithstanding, § 731 empowers the Chief to take any disciplinary action, including the suspension or prohibition of secondary employment, which he or she deems appropriate is no more persuasive. Adopting it undermines significantly the purpose and effect of the LEOBR, in general, and the prohibition of § 729A, in particular.

 Statutes are to be interpreted in light of the goal, aim, or purpose for which they were enacted. *MVA v. Gaddy*, 335 Md. 342, 346, 643 A.2d 442, 444 (1994). Moreover, when a part of a statutory scheme, the meaning of a particular statute must be sought within the context of that entire scheme; it should not be construed in isolation. *Bd. of Trustees of the Md. State Retirement & Pension Systems v. Harry Hughes*, 340 Md. 1, 7, 664 A.2d 1250, 1253 (1995) (citing *Frost v. State*, 336 Md. 125, 137–38, 647 A.2d 106, 112 (1994)) ("We do not read statutory language in isolation or out of context [but construe it] in light of the legislature's general purpose and in the context of the statute as a whole."); *Cassidy*, 338 Md. at 97, 656 A.2d at 761–62 (1995). Nor should we interpret a statutory scheme so as to render any part of it meaningless or nugatory. *See Prince George's County v. Vieira*, 340 Md. 651, 658, 667 A.2d 898, 901 (1995) (quoting *GEICO v. Insurance*

*Comm'r,* 332 Md. 124, 132, 630 A.2d 713, 714 (1993)); *Warsame v. State,* 338 Md. 513, 519, 659 A.2d 1271, 1273 (1995).

Section 731(b) and (c) does provide that the hearing board will "recommend punishment as it deems appropriate under the circumstances, including but not limited to demotion, dismissal, transfer, loss of pay, reassignment or other similar action, which would be considered a punitive measure" and that the Chief, after reviewing the board's findings, conclusions and recommendations, will issue his final order. The circuit court characterized § 731 as both "procedural and substantive as it authorizes the Chief of Police to impose punitive sanctions after a hearing and a finding of guilt." That the statute enumerated some of the punishment options thus was interpreted as conferring substantive powers on the Chief. It is also this aspect of the statute that makes its meaning unclear. Without the enumeration, the statute would clearly be procedural.

■ The LEOBR was enacted in 1974, *see* 1974 Laws, ch. 722, not for the purpose of defining the scope of the Chief's substantive authority, but in order to guarantee that police officers are afforded certain procedural safeguards during any investigation and subsequent hearing which could result in disciplinary action. *See Moats v. City of Hagerstown,* 324 Md. 519, 526, 597 A.2d 972, 975 (1991) ("The language and history of the Law Enforcement Officers' Bill of Rights demonstrates an intent to establish an exclusive procedural remedy for a police officer in departmental disciplinary matters"); *Andrew,* 318 Md. at 12, 566 A.2d at 759 (citing *Montgomery County Dept. of Police v. Lumpkin,* 51 Md.App. 557, 566, 444 A.2d 469, 473 (1982)) ("In enacting the LEOBR, the legislature sought to guarantee specified procedural safeguards to certain law enforcement officers subject to investigations that might lead to disciplinary actions"); *DiGrazia v. County Executive for Montgomery County,* 288 Md. 437, 452, 418 A.2d 1191, 1200 (1980)("The legislative scheme of the LEOBR is simply this: Any law-enforcement officer covered by the Act is entitled to its protection during any inquiry into his conduct

which could lead to the imposition of a disciplinary sanction."); *Calhoun v. Commissioner, Baltimore City Police Department,* 103 Md.App. 660, 672, 654 A.2d 905, 911 (1995) ("[T]he LEOBR is intended to provide a police officer due process protection ... when the officer is investigated and/or interrogated as a result of a disciplinary-type complaint lodged against the officer"); *Nichols v. Baltimore Police Department,* 53 Md.App. 623, 626, 455 A.2d 446, 448 (1983) ("The purpose of the LEOBR was to guarantee to those law enforcement officer's embraced therein procedural safeguards during investigation and hearing of matters concerned with disciplinary actions against the officer"); *Abbott v. Administrative Hearing Board,* 33 Md.App. 681, 682, 366 A.2d 756, 757 (1976)("The purpose of [the LEOBR] was to guarantee that certain procedural safeguards be offered to police officers during any investigation and subsequent hearing which could lead to disciplinary action. . . ."). It is with this purpose in mind that we must determine the meaning and scope of § 731.

Where a statutory provision is ambiguous and the general purpose for which the statute was enacted militates in favor of one among the several possible interpretations, the statute must be given that interpretation which accords with its general purpose. *Cassidy,* 338 Md. at 97, 656 A.2d at 761–62 ("The Workers' Compensation Act 'should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes. Any ambiguity in the law should be resolved in favor of the claimant.' ") (quoting *Victor v. Proctor & Gamble Mfg. Co.,* 318 Md. 624, 629, 569 A.2d 697, 700 (1990)); *Rose v. Fox Pool,* 335 Md. 351, 359, 643 A.2d 906, 909 (1994) (a statute "must be construed in accordance with its general purposes and policies."); *Walker v. Montgomery County Council,* 244 Md. 98, 102, 223 A.2d 181, 183 (1966); (the court is guided by the rule that statutes are to be construed reasonably and with reference to the purpose to be accomplished); *Maguire v. State,* 192 Md. 615, 624, 65 A.2d 299, 303 (1949) (a statute should be construed so as to harmonize all its parts with each other and

render them consistent with its general object and scope). It would be illogical to interpret § 731(b) and (c) as conferring upon the Chief unfettered plenary power to impose disciplinary sanctions when the purpose for which the LEOBR was enacted was to ensure that the Chief's exercise of that authority does not violate police officers' right to procedural due process. *Calhoun,* 103 Md.App. at 672, 654 A.2d at 911. This is especially true in light of § 729A, which we have already interpreted, consistently with the purpose of the LEOBR, as limiting the Chief's authority to deny law enforcement officers the right to engage in secondary employment. Moreover, the Chief's authority to discipline police officers is impacted not only by § 731, but also, as this case demonstrates, by the § 729A prohibition. The appellee's construction of § 731 renders that prohibition meaningless and nugatory.

Its primary function being to provide a procedural framework for the protection of law enforcement officers subject to disciplinary action, the LEOBR is not an effective vehicle for defining the types of disciplinary sanctions available to the Chief. Indeed, not only would the appellee's interpretation of § 731 tend to negate the LEOBR, and especially § 729A, as a protective instrument for law enforcement officers, it would render meaningless Personnel Regulation § 27, as well as Mont.Cty.Code § 35–3(a) and (c) and 2A–15. The former Code section[22], included in the 1965 Code, *see* Mont.Cty.Code (1965), § 96–5, predates the 1974 enactment of the LEOBR. *See* 1974 Laws, ch. 722. There is nothing in the legislative history of the LEOBR to suggest, much less indicate, that the

---

**22.** Section 35–3 also provides, as relevant to the issue *sub judice:*

(f) *Operation of department generally.* The director of police shall extract from all members of the police unquestioned loyalty, unfailing energy and strict obedience and shall take prompt action in prosecuting any member guilty of interfering with, or in any manner impeding, the orderly and efficient operation and conduct of the department of police.

(g) *Charges against members.* The director shall refer all charges properly filed with the director or the department against any member of the police to the office of internal affairs.

Legislature intended, by enacting it, to so impact local legislation and regulations pertaining to law enforcement agencies.[23]

We conclude that § 731 prescribes the procedure for the conduct of department disciplinary proceedings. While it describes the authority of the hearing board to recommend, and confirms the power of the chief to impose, certain disciplinary sanctions, it does not define the scope of the Chief's authority to discipline.

JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY WITH INSTRUCTIONS TO ENTER JUDGMENT IN FAVOR OF THE APPELLANT. COSTS TO BE PAID BY THE APPELLEE.

---

23. The appellee recognizes that the Chief is bound by Personnel Regulation § 27, pursuant to Mont.Cty.Code § 35–3(a). It also is aware that § 27–3, which delineates the types of disciplinary action the Chief is authorized to take, does not address secondary employment and certainly does not permit the imposition of a three month suspension of an officer's right to engage in secondary employment. Consistent with its argument that § 731 defines the disciplinary sanctions the Chief is authorized to impose, the appellee asserts, relying on LEOBR § 734B, that § 731 supersedes Personnel Regulation § 27, to the extent of any conflict. Section 734B provides:

> [T]he provisions of this subtitle shall supersede any State, county or municipal law, ordinance, or regulations that conflicts with the provisions of this subtitle, and any local legislation shall be preempted by the subject and material of this subtitle.

The validity of this argument is dependent upon the interpretation given § 731. Since we do not interpret that section as the appellee does, we need not address the preemption argument.